OPINION
{¶ 1} Defendant-appellant, Steven Thevenin ("appellant"), appeals from the October 4, 2005 judgment of the Franklin County Municipal Court, entered upon a jury verdict finding him guilty of Columbus City Code ("C.C.") 2133.01, a misdemeanor of the first degree, and a finding of guilty by the trial court of C.C. 2131.07(A), a minor misdemeanor. For the following reasons, we affirm.
 {¶ 2} Prior to trial, appellant brought a motion in limine asserting a violation of Crim.R. 16 to exclude the testimony of any paramedics who treated appellant. (Tr. 10.) According to appellant, he filed a formal demand for discovery, but was never notified by the prosecution that it intended to call any paramedics as witnesses until the day of trial. In response, the prosecution argued that it informed appellant of the paramedics' information as soon as they received it.
 {¶ 3} The trial court found that the prosecution did not violate Crim.R. 16 and overruled the motion in limine, noting that though appellant made a formal demand for discovery, appellant did not file a motion to compel the prosecution to furnish all witnesses' names that the prosecution intended to call at trial. (Tr. 13.) Additionally, the trial court stated "if the State intends to call a witness or witnesses * * * not discussed before trial, [the trial court] would take a brief recess and allow [appellant's counsel] an opportunity to know who these people are, generally speaking, what you're going to call them to testify for, and if [appellant's counsel] requests, will grant a continuance to allow [appellant's counsel] a pre-interview with the witness in order that she can accurately prepare the case." (Tr. 13.) The record reveals that the trial court's decision on appellant's motion in limine applied only to the testimony of Brian A. Wade ("Wade"), a paramedic with the Columbus Division of Fire, who was the only paramedic called by the prosecution at trial.
 {¶ 4} The following facts were adduced at trial. Jeremy Noethlich ("Noethlich"), was 17-years-old at the time of trial and a junior in high school when he testified. On January 20, 2005, at approximately 12 p.m., Noethlich was driving home in his parents' gold Nissan Maxima with his brother and his friend, Kelun Ouyang. The teenagers were permitted to leave school early because they had completed their final examinations. Noethlich was driving on Rome-Hilliard Road in Columbus, Ohio, at approximately 40 miles-per-hour when a blue pickup truck traveling in the opposite direction crossed the median and struck Noethlich's vehicle head-on.
 {¶ 5} Todd Atkins ("Atkins") testified that on January 20, 2005, he was driving on Hilliard-Rome Road and was following a gold vehicle in front of him. He observed a blue pickup truck traveling in the opposite direction on Hilliard-Rome Road. Atkins observed the truck cross over into the opposite lane and collide head-on into the gold vehicle. Atkins veered to avoid the collision, and after coming to a stop, checked on the occupants of the vehicles. Atkins identified appellant as the driver of the pickup truck. Atkins testified that appellant "kind of seemed incoherent, obviously bloody from the accident, and at one point was trying to get out of the car and couldn't." (Tr. 99.)
 {¶ 6} Melanie Waldron ("Waldron"), testified that on January 20, 2005, she was traveling behind a blue pickup truck on Hilliard-Rome Road. Waldron testified that she observed the pickup truck for about five minutes "swerving in and out of the road" and "going left of center over the yellow line and back over the white line, coming back into the road, going again over the yellow line." (Tr. 105-106.) Waldron stated that she observed the pickup truck run other vehicles off the road by driving in the opposite lane. According to Waldron, as the truck approached the corner of Hilliard-Rome Road and Nike Road, it drove left of the centerline and stuck the gold vehicle head-on. On cross-examination, Waldron testified that she observed appellant cross over the yellow centerline approximately three or four times. She also testified that she did not observe appellant drinking in his vehicle.
 {¶ 7} James F. Moore, II ("Moore"), testified that he was a police officer with Columbus State Community College and had been trained as an emergency medical technician ("EMT"). On January 20, 2005, Moore was driving on Hilliard-Rome Road approaching Nike Drive when he observed that the pickup truck had collided with another vehicle. Because he was on his way to work, Moore was dressed in his standard police uniform. Moore approached the pickup truck to determine if the driver needed assistance. He walked up to the driver's side door, and observed appellant in the truck. According to Moore, appellant was unconscious, and slumped over in the truck, partially sitting in the driver's seat and leaning over towards the passenger seat. Moore testified that appellant had his pants and underwear around his ankles, and a beer bottle held between his legs. Moore also observed blood on the seat of the truck.
 {¶ 8} Moore attempted to enter the truck from the driver's side, but the driver's side door would only open approximately one or two inches. Moore stated that upon opening the driver's side door, he "could smell a strong odor of alcoholic beverage." (Tr. 77.) Because he was not able to fully open the driver's side door, Moore proceeded to the passenger side where he was able to pry open the door. Moore observed beer bottles and an open case of beer on the passenger side floor, and noticed a "very strong" odor of alcohol on the passenger side. Moore attempted to get appellant's attention and shook him, but was unable to wake him. Moore then pulled the keys out of the ignition, because he was concerned that if appellant "woke up he didn't try to start the vehicle, cause a fire, or explosion or something." (Tr. 78.)
 {¶ 9} After Moore removed the keys, appellant regained consciousness. Moore testified that appellant began yelling and threatening him, telling him that "he was going to kick my ass and he did not like police officers." (Tr. 78.) After appellant attempted to attack Moore, Moore closed the passenger side door so that appellant could not exit the vehicle, told appellant to stay in the vehicle, and dialed 911 for assistance. Moore held the door shut until the emergency squad arrived, which was shortly after Moore dialed for assistance.
 {¶ 10} On cross-examination, Moore stated that he could not determine the origin of the alcohol, only that he detected an odor of alcohol inside the truck and did not see any spilled beer in the truck. According to Moore, appellant had blood on his face and appeared to have a head injury. Moore testified that appellant appeared to exit the truck normally and did not need the assistance of the paramedics.
 {¶ 11} Officer Eric Clouse ("Clouse"), testified that he was a police officer with the Columbus Division of Police and was dispatched to an accident scene around noon on January 20, 2005, near Hilliard-Rome Road and Nike Drive. When Clouse arrived on the scene, he observed an accident in which a pickup truck had gone left of center into the northbound lane and collided head-on with a vehicle traveling northbound. Clouse stated that by the time he arrived on the scene, appellant had already been placed in the ambulance. He checked on appellant in the ambulance but was told that appellant was unconscious and unresponsive. Clouse then proceeded towards the pickup truck. Because the damage to the truck was severe, Clouse determined that it would need to be impounded and towed from the scene. Prior to the truck being towed, Clouse was required to perform an inventory of its interior. According to Clouse, the interior of the truck contained miscellaneous trash, blood on the center console, and an open container of beer. Clouse also noticed that the interior of the truck had a strong odor of alcohol.
 {¶ 12} On cross-examination, Clouse stated that he did not have any personal contact with appellant because he was unconscious, and that he was not able to perform field sobriety tests. Clouse additionally stated that he only observed one beer bottle in the interior of the pickup truck.
 {¶ 13} Wade was the last witness to testify for the prosecution. Appellant neither made an objection at trial to the presentation of Wade's testimony, nor sought, at any time, a recess or continuance as suggested by the trial court in its ruling on appellant's motion in limine. Wade testified that on January 20, 2005, he was called to the scene of an accident on Hilliard-Rome Road near Nike Drive. When Wade first arrived on the scene, he observed appellant sitting in the driver's seat of a pickup truck. According to Wade, appellant seemed alert, was aware what had happened, and was "oriented to person, place, and time." (Tr. 118.) Wade testified that he observed numerous containers of alcohol inside the truck, and one such container was resting in between appellant's legs.
 {¶ 14} Wade testified that he opened the truck so that appellant could exit the vehicle. According to Wade, appellant was able to stand out of the truck, but was placed on a back board and taken to the ambulance by the paramedics to prevent further injury. Wade testified that appellant was "very irate." (Tr. 119). Wade further explained that appellant "was very combative with us. He wanted to fight myself and the crew." Id. Wade also stated that he used profanity towards the paramedics, calling them "mother fuckers" and "white honkies." Id. Wade stated that appellant continued to be argumentative at the ambulance, refusing to cooperative with the paramedics.
 {¶ 15} Wade further testified that while treating appellant at the ambulance, he could smell an odor of alcohol coming from appellant, but did not notice any spilled alcohol on his person. Wade stated that appellant did not have any obvious injuries to treat, such as bleeding, so he conducted neurological tests on appellant. According to Wade, appellant was able to tell him his name and his birth date, and was able to tell Wade that he did not have any pain in his extremities. Wade stated that appellant "appeared to be impaired" because the nature of his walk was woozy and swaying, and because he was "very confrontational" with the paramedics. (Tr. 121-122.)
 {¶ 16} On cross-examination, Wade testified that he checked appellant's eyes, but could not recall if they were bloodshot. Wade also testified that appellant never became unconscious, but that "he was portraying he was unconscious." (Tr. 124.) On re-direct examination, Wade further elaborated on appellant's unconsciousness, testifying that he was restrained on the back board and "was kind of drifting in and out of consciousness." (Tr. 126.) Wade testified that appellant awoke when they conducted a "sternum rub" on appellant. A sternum rub is a procedure used by paramedics to produce an uncomfortable sensation on an individual. Wade indicated that an individual that is unconscious will not awaken when given a sternum rub, and because appellant awoke after receiving the procedure, Wade believed that appellant was not unconscious at the accident scene. Wade further stated on re-direct examination that appellant was attempting to bite the paramedics, and that the smell of alcohol was emanating from appellant.
 {¶ 17} At the conclusion of the prosecution's case-in-chief, appellant made a Crim.R. 29 motion for acquittal, which the trial court overruled. Appellant did not testify on his own behalf, and did not call any witnesses.
 {¶ 18} Appellant timely appealed, and asserts the following two assignments of error for our review:
FIRST ASSIGNMENT OF ERROR:
The trial court erred in finding that the state was not required to provide discovery because Appellant, who had filed a request for discovery, had not filed a motion to compel.
SECOND ASSIGNMENT OF ERROR:
The jury verdict was not supported by sufficient credible evidence and was against the manifest weight of the evidence. As a result, Appellant was denied due process protections under the state and federal Constitutions.
 {¶ 19} In his first assignment of error, appellant, citingLakewood v. Papadelis (1987), 32 Ohio St.3d 1, 511 N.E.2d 1138, asserts that it was not required to file a motion to compel discovery, and that the trial court erred in denying his motion in limine by finding that there had not been a Crim.R. 16 violation. Appellant's actual contention is that the trial court erred by permitting the prosecution to call Wade because the prosecution did not notify appellant that it intended to call Wade until the day of trial.
 {¶ 20} Both parties indicate that the trial court erred in determining that appellant was required to file a motion to compel the prosecution to furnish the identity of all the witnesses the prosecution intended to call at trial. However, this is not dispositive of the assignment of error, as appellant's argument suffers from a fatal procedural flaw. Though not addressed by the parties, our review of the record reveals that appellant sought to exclude Wade's testimony as a discovery sanction pursuant to Crim.R. 16 in a motion in limine, but did not object to the presentation of Wade's testimony at trial.
 {¶ 21} In State v. Boyd, 9th Dist. No. 22151,2005-Ohio-73, the Ninth District Court of Appeals confronted a similar issue as the one presented in the instant case. The defendant Boyd filed a demand for discovery requesting a list of the prosecution's witnesses pursuant to Crim.R. 16(B)(1)(e). On the day of trial, Boyd filed a motion in limine to bar the prosecution from calling witnesses as the prosecution had not provided him with a witness list. The prosecution argued that a list of witnesses was contained in the court record, which was subject to open discovery. The trial court permitted the prosecution's witnesses to testify, denying Boyd's motion in limine. Boyd did not object to the presentation of the witnesses' testimony during trial.
 {¶ 22} The Ninth District observed that "a ruling on a motion in limine is an interlocutory ruling as to the potential admissibility of evidence at trial and cannot serve as the basis for reviewing error on appeal." Boyd, at ¶ 6, citing State v.Grubb (1986), 28 Ohio St.3d 199, 201-202, 28 OBR 285,503 N.E.2d 142. The court continued, stating, "[s]ince a ruling on a motion in limine is only preliminary, an objection to such evidence must be raised once the evidentiary issue is presented during trial in order to properly preserve the question for appeal and to avoid a wavier of such a challenge." Boyd, at ¶ 6, citing State v.Maurer (1984), 15 Ohio St.3d 239, 259-260, 15 OBR 379,473 N.E.2d 768. Because Boyd did not interpose an objection to the witnesses' testimony at trial, the Ninth District determined that Boyd failed to preserve for appeal the Crim.R. 16 issue. Boyd,
at ¶ 7.
 {¶ 23} We agree with the reasoning of the Ninth District inBoyd, supra, and its reliance on Grubb and Maurer. As the Supreme Court of Ohio noted in Maurer, supra, that a motion in limine "adds a procedural step prior to the offer of evidence."Maurer, at 259, quoting Redding v. Ferguson (Tex.Civ.App. 1973), 501 S.W.2d 717, 722. The court further noted that a motion in limine "may be used as the equivalent of a motion to suppress evidence, which is either not competent or improper because of some unusual circumstance." Maurer, at 259, fn. 14.
 {¶ 24} Here, as in Boyd, appellant sought to exclude Wade as a Crim.R. 16 sanction in a motion in limine for the failure of the prosecution to provide discovery of Wade's name consistent with his demand for discovery. The trial court in the instant case denied the motion in limine and permitted Wade to testify, but appellant failed to object to Wade's testimony at trial. We therefore conclude that because appellant did not object to Wade's testimony during trial, appellant has failed to preserve the issue on appeal regarding the trial court's decision on his motion in limine.
 {¶ 25} Accordingly, appellant's first assignment of error is overruled.
 {¶ 26} In appellant's second assignment of error, appellant asserts that the jury verdict convicting him of operating a vehicle under the influence of alcohol, a drug of abuse, or combination thereof, was not supported by sufficient evidence. Appellant argues that the conviction was based on evidence that was circumstantial and open to multiple interpretations. Appellant also argues that his conviction was not supported by sufficient evidence as no scientific tests were conducted on appellant to determine his alcohol level and the police officers did not interview appellant or conduct field sobriety tests on him. Appellant additionally asserts that his conviction was against the manifest weight of the evidence.
 {¶ 27} The role of an appellate court presented with such a sufficiency of the evidence challenge has been established by the Supreme Court of Ohio in State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 28} However, whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541. An appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts" in determining whether the evidence is, in fact, sufficient.Jackson, supra, at 319. The weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 80, 24 O.O.3d 150, 434 N.E.2d 1356. Thus, a jury verdict will not be disturbed on the sufficiency of the evidence unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh
(2001), 90 Ohio St.3d 460, 484, 739 N.E.2d 749; Jenks, supra.
 {¶ 29} Appellant was charged with operating a vehicle under the influence, which is a misdemeanor of the first degree. C.C. 2133.01 states:
(A) No person shall operate any vehicle within this City, if, at the time of the operation, any of the following apply:
(1) The person is under the influence of alcohol, a drug of abuse, or a combination of them.
 {¶ 30} At trial, testimony was presented that appellant was driving erratically, forcing other vehicles to the side of the road. The record demonstrated that appellant drove into the opposing lane of traffic and collided with another vehicle head-on. Moore and Clouse testified that they could smell an odor of alcohol originating from the inside of the pickup truck, and Wade testified that he could smell an odor of alcohol on appellant. Moore and Wade testified that appellant had an open container of beer in between his legs immediately following the collision, and that his pants and underwear were around his ankles. Moreover, the record reveals that appellant was combative and argumentative.
 {¶ 31} Based on the above testimony, the evidence presented at trial, when viewed in a light most favorable to the prosecution, provides a sufficient basis upon which the trier of fact could conclude that appellant was guilty, beyond a reasonable doubt, of operating a vehicle while under the influence of alcohol in violation of C.C. 2133.01. Therefore, appellant's conviction was supported by sufficient evidence.
 {¶ 32} Even though a conviction may be supported by sufficient evidence, it may still be reversed as being against the manifest weight of the evidence. Thompkins, supra, at 387. Determinations of the weight to be given to evidence and the credibility of witnesses remain within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. In reviewing a manifest weight challenge, the court of appeals sits as a "thirteenth juror" and, after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. See, also, Columbus v. Henry (1995),105 Ohio App.3d 545, 547-548, 664 N.E.2d 622. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "exceptional case in which the evidence weighs heavily against the conviction." State v.Thompkins, 78 Ohio St.3d 380, 387, 678 N.E.2d 541.
 {¶ 33} After reviewing the entire record and weighing the evidence presented by appellee and all reasonable inferences, and considering the credibility of the witnesses, we find nothing to indicate that the jury clearly lost its way or that any miscarriage of justice resulted as to require a new trial. The weight to be accorded the evidence and determinations as to the credibility of witnesses were within the province of the jury.DeHass, supra, at paragraph one of the syllabus. The jury was therefore within its province to determine what weight to give the evidence that appellant had an odor of alcohol, had containers of beer in his vehicle, veered into oncoming traffic, and was argumentative. Appellant's conviction was not against the manifest weight of the evidence.
 {¶ 34} For all of the foregoing reasons, appellant's second assignment of error is overruled.
 {¶ 35} Having overruled both of appellant's assignments of error, we affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
Klatt, P.J., and Bryant, J., concur.