OPINION
{¶ 1} Defendant-appellant, Kelly J. Volpe, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm that judgment.
 {¶ 2} On the evening of February 24, 2006, two motorists in the northwest area of Columbus called 911 to report a person driving a pick-up truck erratically. One of the motorists saw that the driver was a woman and that there was also a child in the truck. Both motorists witnessed the truck jump up onto the curbed median on at least two *Page 2 
occasions, frequently go left of center, and stop at stop lights far short of the intersections and then fail to move when the light changed to green without prompting from other motorists. One of the motorists followed the truck for half an hour, trying to help the police locate it. Before the police could find it, the truck went off the road, and crashed into a tree.
 {¶ 3} Columbus Police Department Sergeant, Steve Tarini, arrived at the scene within seconds of the accident. Tarini detected an odor of alcohol as he approached the truck. He found a woman, later identified as appellant, trapped behind the steering wheel of the truck. Appellant was bleeding from her head. Tarini asked appellant if she was alone. Appellant replied that she was. Appellant was moaning and asking for help to get out of the truck. Other officers arrived on the scene and discovered appellant's six-year old daughter, Abigail, on the ground on the other side of the truck. Initially, Abigail did not have a pulse. Her eyes were fixed and dilated, which is indicative of a head injury. Tarini told another officer, Deann Trionfante, to stay with appellant and he went to assist the other officers with Abigail. Although paramedics were later able to obtain a pulse, Abigail died three days later from multiple blunt force injuries consistent with an automobile accident.
 {¶ 4} Trionfante continued to speak with appellant. Trionfante was "pretty close" to appellant's head and could smell alcohol on appellant's breath. According to Trionfante, although appellant had a head laceration, she was calm. Trionfante asked appellant if she was the only person in the vehicle. Appellant responded that she was. Trionfante also asked if appellant had been drinking. Appellant used profanity and stated that was none of Trionfante's business. Appellant denied having any medical conditions *Page 3 
such as diabetes and denied taking any medications that day. Despite her head injury, appellant was responsive to Trionfante's medical-related questions.
 {¶ 5} Lieutenant Benjamin Anders, of the Upper Arlington Fire Department, testified that upon arriving at the scene he took over responsibility for assessing appellant's medical condition. He indicated that appellant was responsive to his questions. Appellant's vital signs were within normal limits. Appellant responded to his question about alcohol by stating that she only had a couple of merlots. Anders noticed that appellant had constricted pupils, which "can be a sign of certain drugs and medication." After appellant was placed in the ambulance, Anders stated that appellant was not sufficiently oriented to realize that she was in the back of an emergency vehicle and on her way to the hospital.
 {¶ 6} Within an hour and a half after the accident, officers from the Perry Township Police Department asked appellant to submit to a chemical test for alcohol. Appellant refused to submit to the test. Perry Township police also impounded appellant's truck and its contents. Inside the truck, the police found a black purse that contained appellant's state identification card. The purse also contained two pill bottles: one was empty, but the other contained a number of pills. The label on the bottle containing pills indicated that the pills were "Xanax" and that the prescription was filled for appellant on February 22, 2006, two days prior to the accident. Of the 60 pills that the prescription label indicated were originally in the bottle, there were 39 full and 16 half pills remaining.
 {¶ 7} A Franklin County grand jury indicted appellant with two counts of aggravated vehicular homicide in violation of R.C. 2903.06, each with a specification *Page 4 
pursuant to R.C. 2941.1415, and one count of operating a vehicle while under the influence ("OVI") in violation of R.C. 4511.19, with a specification pursuant to R.C. 2941.1413. Appellant entered a not guilty plea to the charges and proceeded to a jury trial. Before her trial, the trial court held a hearing on appellant's motion to suppress any statements she made to police and medical personnel after the accident. The trial court denied appellant's motion and allowed the State to introduce appellant's statements at trial.
 {¶ 8} The jury found appellant guilty of all three charges and their attendant specifications. For purposes of sentencing, the trial court merged the two counts of aggravated vehicular homicide and sentenced appellant to a ten-year prison term for one count of aggravated vehicular homicide plus a three-year prison term for the specification. The trial court also sentenced appellant to a 30-month prison term for the OVI count plus an additional five-year prison term for the specification. In total, appellant received a prison term of twenty and one-half years.
 {¶ 9} Appellant appeals and assigns the following errors:
ASSIGNMENT OF ERROR NUMBER ONE:
 THE TRIAL COURT ERRED WHEN IT CONVICTED AND SENTENCED THE DEFENDANT ON BOTH THE CHARGE OF AGGRAVATED VEHICULAR HOMICIDE IN VIOLATION OF R.C. 2903.06(A)(1), WHICH PROSCRIBES CAUSING THE DEATH OF ANOTHER AS A PROXIMATE RESULT OF OPERATING A VEHICLE WHILE UNDER THE INFLUENCE, AND THE CHARGE OF OPERATING A VEHICLE WHILE UNDER THE INFLUENCE, IN VIOLATION OF R.C. 4511.19, SINCE THE OFFENSES ARE ALLIED OFFENSES OF SIMILAR IMPORT UNDER R.C. 2941.25, WHICH PRECLUDES MULTIPLE CONVICTIONS AND SENTENCING FOR THE SAME CONDUCT AND BECAUSE THE CONSTITUTIONAL PROVISIONS OF THE DOUBLE JEOPARDY CLAUSE PROHIBIT THE INFLICTION OF *Page 5 
CUMULATIVE PUNISHMENTS FOR BOTH GREATER AND LESSER INCLUDED OFFENSES.
 ASSIGNMENT OF ERROR NUMBER TWO:
 THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT'S OBJECTIONS TO THE EXHIBITS PURPORTING TO BE COPIES OF PRIOR JUDGMENT ENTRIES BECAUSE OF THE STATE'S VIOLATIONS OF THE RULES OF DISCOVERY AND BECAUSE THE DOCUMENTS WERE NOT OTHERWISE ADMISSIBLE.
 ASSIGNMENT OF ERROR NUMBER THREE:
 THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT'S MOTION IN LIMINE AND ALLOWED THE STATE TO PRESENT EVIDENCE THAT THE DEFENDANT HAD CONSUMED ALCOHOL AND TO ARGUE THAT THE DEFENDANT WAS OPERATING UNDER THE INFLUENCE OF ALCOHOL WHEN THE STATE WAS WELL AWARE THAT THIS WAS NOT THE CASE BECAUSE THE HOSPITAL TESTS HAD INDICATED THAT NO ALCOHOL HAD BEEN DETECTED IN THE DEFENDANT'S BLOOD.
 ASSIGNMENT OF ERROR NUMBER FOUR:
 THE TRIAL COURT ERRED BY ADMITTING EVIDENCE OF AN ALLEGED REFUSAL, WHEN THE DEFENDANT HAD NEVER BEEN ARRESTED BEFORE BEING ASKED TO SUBMIT TO TESTING AND FURTHER COMPOUNDED THIS ERROR BY REFUSING TO ALLOW THE DEFENDANT TO ASK ANY QUESTIONS REGARDING THE UNDERLYING FACTS SURROUNDING THE ALLEGED REFUSAL. THE TRIAL COURT FURTHER ERRED BY PROHIBITING THE DEFENDANT FROM CHARACTERIZING THE FAILURE OF THE STATE TO HAVE THE PILLS TESTED AT THE DEFENDANT'S REQUEST AS A REFUSAL BY THE STATE SINCE THE RULES MUST BE APPLIED UNIFORMLY TO ALL PARTIES.
 ASSIGNMENT OF ERROR NUMBER FIVE:
 THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE, OVER OBJECTION, TO PROVE THAT PILLS IN A BOTTLE WERE XANAX BASED UPON THE HEARSAY STATEMENTS OF THE LABEL ON THE PILL BOTTLE. *Page 6 
 ASSIGNMENT OF ERROR NUMBER SIX:
 THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT'S MOTION TO SUPPRESS HER STATEMENTS.
 {¶ 10} For ease of analysis, we will address appellant's assignments of error out of order. In her sixth assignment of error, appellant contends that the trial court erred when it denied her motion to suppress. We disagree.
 {¶ 11} An appellate court's review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 328, 332. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is, therefore, in the best position to resolve factual questions and evaluate witness credibility. State v. Curry (1994), 95 Ohio App.3d 93, 96. As such, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. However, an appellate court independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, "whether as a matter of law, the facts meet the appropriate legal standard." Curry, at 96.
 {¶ 12} Appellant claims that statements she made to the police and medical personnel after the accident were not voluntary due to the serious injuries she sustained in the accident. An accused's statement may not be used against her if the statement itself is proved to be involuntary. State v. Kassow (1971), 28 Ohio St.2d 141, paragraph one of the syllabus; Spears v. State (1853), 2 Ohio St. 583, 585; State v.Edwards (1976), 49 Ohio St.2d 31, 39, citing Bram v. United States
(1897), 168 U.S. 532, 542, 18 S. Ct. 183 (confession must be voluntary). The basic test for voluntariness is whether the *Page 7 
confession is the product of a rational intellect and a free will.Mincey v. Arizona (1978), 437 U.S. 385, 398, 98 S.Ct. 2408; Columbus v.Stepp (Oct. 6, 1992), Franklin App. No. 92AP-486 (question is whether the confession is the product of an essentially free and unconstrained choice by its maker).
 {¶ 13} To determine voluntariness, the court must look at the totality of the circumstances surrounding the confession and consider such factors as the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. Edwards, at paragraph two of the syllabus. The question of whether a statement is voluntary is a question of law which we review de novo. State v. Patterson, Montgomery App. No. 20977,2006-Ohio-1422, at ¶ 22.
 {¶ 14} Appellant does not allege that the police mistreated or threatened her. Nor does she allege that the police induced her to make any statements. Rather, she contends that her injuries rendered her responses to the officers' questions involuntary. The trial court disagreed. Although appellant was injured in the accident, the trial court found that there was no indication that her injuries were so severe as to impair her ability to decide whether or not to respond to questions. We agree.
 {¶ 15} Appellant mainly had contact with three people immediately after the accident. Sergeant Tarini was the first to arrive at the accident scene. He testified that he saw appellant trapped inside the truck. He heard appellant moaning and saw blood from an injury to her forehead. He asked her if she was alone and she replied that she was. He could not remember any other specific statements by appellant, but felt that appellant was responsive to his questions. *Page 8 
 {¶ 16} Officer Trionfante next arrived on the scene. She spent a significant amount of time trying to comfort and calm appellant. Trionfante is certified to deal with people in crisis. Trionfante testified that appellant had obvious head injuries but was conscious. When she asked appellant her name, appellant gave her full name. Trionfante asked appellant whether she had any medical conditions or had taken any medications. Appellant gave a negative response to both questions. When Trionfante asked if appellant had been drinking, appellant used profanity and replied that it was none of her business. Appellant also told Trionfante that there was no one else in the truck. Trionfante asked appellant who the police could call for instructions regarding where they should tow appellant's truck. Appellant responded with a name and telephone number.
 {¶ 17} Finally, paramedic Anders transported appellant to the hospital. He questioned her to assess her injuries. He testified that she was conscious and responsive to his questions. She told him that she was not having breathing problems but that her head hurt. She denied using any medications but stated that she had a couple of merlots. Anders testified that appellant sustained lacerations on her head but he did not observe any other injuries. Anders also stated that appellant did not seem to know where she was.
 {¶ 18} The testimony of the police and medical personnel supports the trial court's factual finding that appellant was conscious and responsive to their questions. See State v. Smith (May 10, 1996), Miami App. No. 95-CA-17 (statements voluntary where hospitalized defendant was alert, cooperative, and responsive). Although obviously injured and somewhat disoriented, appellant was calm and she gave coherent responses to questions from the officers and medical personnel. She was able to provide her name *Page 9 
and also a name and telephone number of someone who would assume responsibility for her truck. Although appellant denied that anyone else was with her in the truck, this inaccurate response does not indicate that her response was involuntary.
 {¶ 19} Further, appellant's injuries were not of the magnitude that would render her statements involuntary. Compare Mincey, at 396-399 (statements not voluntary when defendant questioned on hospital bed, seriously wounded, encumbered with tubes, needles, and breathing apparatus, and barely conscious) with State v. Jenkins (1984),15 Ohio St.3d 164, 229-232 (statements made in emergency room after gunshot wounds to chest and spinal cord were voluntary) and Stepp, supra (statements voluntary where injuries sustained from accident were less severe than those described in Mincey).
 {¶ 20} Based on the totality of the circumstances, we find that the appellant's statements to police and medical personnel the night of the accident were voluntary. The trial court did not err when it denied appellant's motion to suppress. Appellant's trial counsel was free to argue that appellant's statements were not reliable given her condition. Appellant's apparent disorientation and inaccurate responses to some of the questions may have impacted the probative weight of her admissions. Nevertheless, the standard for admissibility is whether the statements were voluntarily given. Kassow, supra. Once admitted, reliability and probative weight are questions for the tier of fact to assess. Crane v.Kentucky (1986), 476 U.S. 683, 688-689, 106 S.Ct. 2142; State v.Davis, Cuyahoga App. No. 83033, 2004-Ohio-1908, at fn. 13. Appellant's sixth assignment of error is overruled.
 {¶ 21} Appellant contends in her third assignment of error that the trial court erred when it denied her motion in limine seeking to prohibit the State from introducing *Page 10 
evidence or arguing that she was operating her truck under the influence of alcohol because an inadmissible blood test indicated that appellant's blood alcohol level was less than 0.01.
 {¶ 22} A pretrial ruling on a motion in limine is a preliminary, precautionary ruling on an anticipated evidentiary issue. State v.Grubb (1986), 28 Ohio St.3d 199, 201. The denial of a motion in limine preserves no error for appeal. State v. Hunter, 169 Ohio App.3d 65,2006-Ohio-5113, at ¶ 28, citing State v. Hill (1996), 75 Ohio St.3d 195,202-203. Absent an objection to the allegedly improper evidence during trial, the issue is not properly preserved and is waived on appeal. Id.
 {¶ 23} After the trial court denied appellant's motion in limine, it reminded counsel that such a motion "is a preliminary ruling and I can revisit it at any time." However, counsel did not object to any of the testimony about the detection of an odor of alcohol on appellant or her admissions regarding the consumption of alcohol. Thus, appellant failed to properly preserve this alleged error on appeal. Columbus v.Thevenin, Franklin App. No. 05AP-879, 2006-Ohio-4714, at ¶ 24;Hunter, at ¶ 29; State v. Gonzalez (July 11, 1997), Huron App. No. H-96-061. Appellant's third assignment of error is overruled.
 {¶ 24} Appellant contends in her fourth assignment of error that the trial court erred when it admitted evidence indicating that she refused to submit to alcohol testing after the accident. Appellant contends that the trial court further erred by prohibiting her from explaining the circumstances of her refusal.
 {¶ 25} After the accident, appellant was taken to Riverside Methodist Hospital for treatment of her injuries. Approximately an hour and a half after the accident, Officer Eric Delbert of the Perry Township Police Department went to the hospital and asked *Page 11 
appellant to submit to a chemical/alcohol test. He read from a state-prescribed form about the test and then asked her to submit to the test. The trial court allowed Officer Delbert to testify that appellant refused to take the test.
 {¶ 26} Appellant argued at trial that because she was not under arrest when the officer asked her to submit to the chemical tests, her refusal was not admissible pursuant to R.C. 4511.191(A). R.C. 4511.191(A) provides that any person driving a vehicle on a highway has given consent to a chemical test or tests of the person's bodily substances to determine the level of alcohol or drugs if the person is arrested for operating a vehicle while under the influence. This statute applies to post-arrest, police-requested chemical tests. See Middletown v.Newton (1998), 125 Ohio App.3d 540, 545; State v. Arnold (Dec. 11, 1992), Portage App. No. 92-P-0046.
 {¶ 27} Officer Delbert testified that appellant was not under arrest when he asked her to submit to the chemical/alcohol tests. Thus, R.C.4511.191(A) does not apply.
 {¶ 28} The refusal of one accused of intoxication to take a reasonably reliable chemical test for intoxication may have probative value on the question of whether the accused was intoxicated at the time of the refusal. Westerville v. Cunningham (1968), 15 Ohio St.2d 121, paragraph one of the syllabus; Maumee v. Anistik (1994), 69 Ohio St.3d 339, 342
(refusal of tests may be admitted at trial under certain circumstances);South Dakota v. Neville (1983), 459 U.S. 553, 103 S.Ct. 916 (holding that admission of evidence of a refusal to submit to blood-alcohol tests does not offend constitutional protections).
 {¶ 29} Relying on Arnold, however, appellant argues that a pre-arrest refusal, as opposed to a post-arrest refusal, is not admissible to prove consciousness of guilt. The Arnold court, with little analysis, held that a pre-arrest refusal to submit to chemical testing *Page 12 
is not admissible because such a refusal is not based upon a "consciousness of guilt." Id. We question that holding. There does not appear to be a significant difference between a pre-arrest refusal to submit to chemical testing and a post-arrest refusal. Either way, it is reasonable to infer that a refusal to take the test indicates a fear of the results. Maumee, at 343; cf. State v. Marsh, Belmont App. No. 04 BE 18, 2005-Ohio-4690, at ¶ 46 ("[w]e find it wholly irrelevant when the officers asked Marsh to submit to the test.")
 {¶ 30} Nevertheless, even if evidence of appellant's refusal should not have been admitted, the error was harmless. A reviewing court may overlook an error where the admissible evidence demonstrates overwhelming proof of defendant's guilt. State v. McCray (1995),103 Ohio App.3d 109, 115, citing State v. Williams (1988),38 Ohio St.3d 346, 351; State v. Tucker, Franklin App. No. 00AP-670, 2002-Ohio-3274, at ¶ 44; see, also, State v. Brown (1992), 65 Ohio St.3d 483, 485
("Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal.").
 {¶ 31} In this case, there was overwhelming evidence of appellant's impairment. Two motorists who called the police described appellant's prolonged, erratic driving before the accident. After the accident, two officers who came into contact with appellant while she was trapped in her truck noticed an odor of alcohol. Paramedic Anders asked appellant if she had been drinking that night. He testified that appellant told him that she had a couple of merlots. Anders testified that appellant's pupils were constricted, an indication of certain drugs or medications. Finally, the label on a pill bottle obtained from appellant's purse indicated that a pharmacy filled a "Xanax" prescription for appellant only two days before the accident. There were 39 full and 16 half pills in the bottle of the 60 *Page 13 
pills indicated on the label. Dr. John Wyman, the chief toxicologist for Franklin County, testified that the pills had markings on them consistent with alprazolam. Xanax is a trade name for alprazolam. Alprazolam has the same effect on driving that alcohol does: it slows reaction time and impairs motor skills and concentration.
 {¶ 32} Given the overwhelming evidence of appellant's impairment by either alcohol, a drug of abuse, or a combination of the two, the admission of evidence of appellant's refusal to submit to testing, even if in error, was harmless. See Columbus v. Dials, Franklin App. No. 04AP-1099, 2006-Ohio-227, at ¶ 21 (on reconsideration, noting that improper admission of defendant's refusal of test was harmless error).
 {¶ 33} Appellant also argues that she should have been allowed to introduce testimony indicating the reasons for her refusal. However, appellant did not attempt to present or proffer such evidence. Thus, the trial court did not prohibit the admission of such evidence.
 {¶ 34} Appellant's fourth assignment of error is overruled.
 {¶ 35} Appellant contends in her fifth assignment of error that the trial court erred when it allowed Officer Kenneth Cesaro of the Perry Township Police Department to read the label on the pill bottle found in appellant's possession. The typed label had appellant's name on it and said "Xanax." Appellant claims that the words on the label were inadmissible hearsay that could not be used to prove that the pills in the bottle were Xanax. Any error in allowing Officer Cesaro to read the pill bottle label was also harmless.
 {¶ 36} After the officer testified, Dr. Wyman testified that the pills in the bottle were marked "GG249." The doctor testified that such a marking indicates that the pills *Page 14 
were two milligram doses of alprazolam, a Schedule IV controlled substance. As previously noted, Xanax is a trade name for alprazolam. Dr. Wyman's testimony that the markings on the pills indicated that the pills were alprazolam is significant evidence. Therefore, even without Officer Cesaro's testimony there was competent, credible evidence offered to identify the pills. State v. Maag, Hancock App. No. 5-03-32,2005-Ohio-3761, at ¶ 51; State v. Vogel, Crawford App. No. 3-05-10,2005-Ohio-5757, at ¶ 11 (no error in admitting opinion testimony indicating identity of substance, even without chemical testing);State v. Hicks (Iowa App. May 15, 2002), No. 01-1626.
 {¶ 37} Appellant argues, however, that Dr. Wyman could not give an expert opinion because he could not testify with reasonable scientific certainty that the pills were in fact alprazolam. Appellant's argument overlooks the fact that Dr. Wyman's opinion did not have to qualify as an expert opinion. The State can establish the identity of a drug through circumstantial evidence as long as the witness (even a lay witness) has first hand knowledge and sufficient experience or specialized knowledge for arriving at the opinion expressed. State v.McKee (2001), 91 Ohio St.3d 292, 297. Dr. Wyman is the chief toxicologist for Franklin County and has worked in the field of toxicology for 23 years.[1] Dr. Wyman consulted with medical reference materials and concluded that the pills were alprazolam based upon the markings on the pills. Therefore, the State laid a foundation sufficient to allow Dr. Wyman to give his opinion about the identity of the pills. See Vogel, at ¶ 11. Moreover, appellant's contention that the pills may have been counterfeit (because they were purchased over the internet) go to the weight of the evidence, not to the admissibility of the doctor's testimony. *Page 15 
 {¶ 38} Appellant's fifth assignment of error is overruled.
 {¶ 39} Appellant contends in her second assignment of error that the trial court erred in admitting evidence of appellant's prior OVI convictions. We disagree.
 {¶ 40} Appellant was indicted for two counts of aggravated vehicular homicide. Each of the counts alleged that she was convicted of or pleaded guilty to three prior violations of R.C. 4511.19 or an equivalent municipal ordinance within the previous six years. These prior convictions increased the severity of the charge from a second-degree felony to a first-degree felony. R.C.2903.06(B)(2)(a)(iv). Each count also contained a specification alleging that appellant had previously been convicted of three or more OVI violations.
 {¶ 41} Appellant was also indicted for one count of OVI. That count, and its attendant specification, alleged that appellant was previously convicted of or pleaded guilty to five or more OVI violations within the last 20 years. These prior convictions increased the severity of the charge from a first-degree misdemeanor to a fourth-degree felony. R.C.4511.19(G)(1)(d).
 {¶ 42} To prove four of appellant's prior convictions, the State presented exhibits 43, 44, 45, and 46. These exhibits are entries from the Franklin County Municipal Court. Exhibit 43 indicates that an individual named "K. Curry" entered a no contest plea with a stipulated finding of guilt.[2] The entry is time-stamped May 30, 2000. Exhibit 44 indicates that an individual named "Curry" pled guilty to one violation of OVI. The entry was time-stamped November 9, 1998. Exhibit 45 indicates that an individual named "Kelly Curry" *Page 16 
entered a guilty plea to one charge of OVI. The entry is time-stamped April 26, 1995. Exhibit 46 indicates that an individual named "Kelly Curry" entered a guilty plea to one charge of OVI. The entry is time-stamped October 12, 1994.
 {¶ 43} To prove appellant's other prior convictions, the State presented exhibits 47 and 48. These exhibits are documents entitled "Franklin County Municipal Court Purged Case Index." They are not judgment entries. Apparently, the municipal court destroyed a number of older case files, but it retained an index of the documents destroyed. Thus, no actual entries exist for these two convictions. Instead, the court provided these index documents that identified the prior convictions. Exhibit 47 indicated that an individual named "Kelly Jo Corry" was sentenced for one count of OVI on September 27, 1989. Exhibit 48 indicates that an individual named "Kelly J. Curry" was sentenced for one count of OVI on August 4, 1988. These exhibits also contained the individual's social security number.
 {¶ 44} Officer Cesaro testified about appellant's prior convictions. He obtained a driving record for "Kelly J. Volpe" from the Ohio Bureau of Motor Vehicles ("BMV Report") using the social security number on the state identification card found in appellant's purse. That card had on it the name "Kelly J. Volpe." Officer Cesaro testified that appellant's picture was on the card. The social security number on the BMV Report was identical to the social security number of the individual named in exhibits 47 and 48 ("Kelly J./Jo Curry"). The BMV Report also referred to the six prior OVI convictions reflected in exhibits 43 through 48 and a number of license suspensions.
 {¶ 45} Midway through trial, and before the State introduced these documents, appellant's counsel informed the trial court that the State could not prove the prior *Page 17 
convictions because it did not provide appellant with the documents in discovery. Appellant's counsel requested that the trial court prohibit the State from using the documents at trial as a sanction for its discovery violation. The prosecutor admitted that he failed to provide any of the documents to appellant's counsel before trial. The prosecutor told the trial court that he assumed the existence of the prior convictions would be stipulated to, eliminating the need for the documents. However, after appellant's counsel brought the matter to his attention, the prosecutor obtained copies of all the documents and provided them to appellant's counsel. The trial court allowed the State to introduce the documents into evidence.
 {¶ 46} Appellant first contends that the trial court should have granted a mistrial based upon the discovery violation. We disagree. Although appellant claims that the trial court should have granted a mistrial, appellant's counsel never moved for a mistrial. Therefore, we need only determine whether the trial court erred by allowing the State to introduce the documents into evidence at trial.
 {¶ 47} Whether to impose sanctions for discovery violations is generally within the sound discretion of the trial court. State v.Harcourt (1988), 46 Ohio App.3d 52, 54. Accordingly, our inquiry is limited to a determination of whether the trial court's action in this case constituted an abuse of that discretion. Columbus v. Barnes, Franklin App. No. 03AP-44, 2003-Ohio-4678, at ¶ 7, citing State v.Parson (1983), 6 Ohio St.3d 442, 445. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.State v. Montgomery (1991), 61 Ohio St.3d 410, 413. *Page 18 
 {¶ 48} The prosecutor conceded that he did not provide the documents to appellant's counsel prior to trial. He argued, however, that appellant was not surprised by the documents because the indictment listed the prior convictions and he provided appellant with a copy of the BMV Report which included all of the prior convictions. The prosecutor also informed the trial court that he would not object to a continuance if appellant wanted more time to examine the exhibits at issue. Appellant did not request a continuance.
 {¶ 49} A trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery. State v. Wilmoth (1995),104 Ohio App.3d 539, 544; Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, 5. The purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party. The overall purpose is to produce a fair trial. Id. at 3. In choosing a proper sanction, the trial court should consider "the extent to which the [party] will be surprised or prejudiced by the witness' testimony, the impact of witness preclusion on the evidence at trial and the outcome of the case, whether violation of the discovery rules was willful or in bad faith, and the effectiveness of less severe sanctions." Id. at 5.
 {¶ 50} Appellant did not claim that she was surprised by the State's offering into evidence documents showing appellant's prior convictions. Appellant knew that the indictment alleged a number of prior convictions and the State provided her with a copy of her BMV Report that included all of her prior convictions. Further, any potential harm arising from surprise could have been alleviated by a continuance so that appellant's *Page 19 
counsel could analyze the documents. Appellant's counsel did not request a continuance. Instead, appellant's counsel asked for the most severe sanction — exclusion of the documents. Given these circumstances, we cannot say that the trial court abused its discretion when it allowed the State to offer these documents into evidence at trial.
 {¶ 51} Appellant next challenges the admissibility of exhibits 43 through 48. Before addressing each exhibit, we reject appellant's claim that the sole method for the State to prove a prior conviction is through a certified judgment entry. R.C. 2945.75(B). This statute provides that a copy of a judgment entry, with proof that the individual named in the judgment entry is the offender in the case at bar, is "sufficient to prove such prior conviction." Id. The statute does not make a judgment entry the sole method to prove a prior conviction but, rather, provides that it is a sufficient method to do so. State v.Pisarkiewicz (Oct. 18, 2000), Medina App. No. C.A. 2996-M; State v.Jarvis (Dec. 23, 1999), Portage App. No. 98-P-0081; but, see, State v.Finney, Fulton App. No. F-06-009, 2006-Ohio-5770, at ¶ 18 (holding that State was required to provide judgment of conviction in order to prove prior conviction). Additionally, R.C. 2945.75(B) relates to the sufficiency of the evidence required to prove a prior conviction, not the admissibility of such evidence. State v. Lumpkin, Franklin App. No. 05AP-656, 2006-Ohio-1657, at ¶ 11.
 {¶ 52} At trial, appellant objected to these documents only on the grounds that they were not certified judgment entries that complied with R.C. 2945.75(B). On appeal, she now argues that: (1) exhibits 47 and 48 were not properly authenticated and are inadmissible hearsay, (2) exhibits 44 and 45 do not contain guilty findings, and (3) exhibits 43 and 44 indicate that appellant did not have counsel for the convictions. Because appellant did not present any of these arguments at trial, she has forfeited them *Page 20 
but for plain error. An alleged error constitutes plain error only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different. State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 108. "`[N]otice of plain error is taken with utmost caution only under exceptional circumstances and only when necessary to prevent a manifest miscarriage of justice.'" State v.Martin, Franklin App. No. 02AP-33, 2002-Ohio-4769, at ¶ 28. (Citation omitted.)
 {¶ 53} Exhibits 47 and 48 are certified public documents that were self-authenticated pursuant to Evid.R. 902(4). They are data compilations certified as correct by the Franklin County Municipal Court Clerk of Courts. Further, the documents were generated by the Municipal Court and, therefore, were admissible pursuant to Evid.R. 803(8)(a) as public records. See State v. Pesec, Portage App. No. 2006-P-0084,2007-Ohio-3846, at ¶ 29 (civil court documents admissible as public records); State v. Dominguez (Jan. 29, 1999), Hamilton App. No. C-980148 (noting public record exception applies to court documents). The trial court did not plainly err by admitting these exhibits.
 {¶ 54} Appellant next contends that exhibits 44 and 45 did not prove prior convictions because they do not state that appellant was found guilty of an offense. We disagree. The statutes that enhance the severity of the charges and the statutory specifications require previous convictions or guilty pleas. See R.C. 2903.06(B)(2)(a)(iv) (enhanced offense if "[t]he offender previously has been convicted of or pleaded guilty to three or more prior violations * * *"); R.C.4511.19(G)(1)(d) (enhanced offense if offender "previously has been convicted of or pleaded guilty to five or more violations * * *"); R.C.2941.1415(A) (specification where "offender previously has been convicted of or pleaded guilty to three or more violations * * *"); R.C.2941.1413(A) (specification where offender *Page 21 
"previously has been convicted of or pleaded guilty to five or more equivalent offenses"). These exhibits indicated that appellant pled guilty to two separate offenses of operating a motor vehicle under the influence. The trial court did not plainly err by admitting these exhibits.
 {¶ 55} In regard to exhibits 43 and 44, appellant is correct that an uncounseled conviction obtained without a valid waiver of the right to counsel may not be used to enhance a later criminal offense. State v.Brooke, 113 Ohio St.3d 199, 2007-Ohio-1533, at ¶ 9. "`Where questions arise concerning a prior conviction, a reviewing court must presume all underlying proceedings were conducted in accordance with the rules of law and a defendant must introduce evidence to the contrary in order to establish a prima-facie showing of constitutional infirmity.'" Id. at ¶ 11, quoting State v. Brandon (1989), 45 Ohio St.3d 85, syllabus. Once a prima-facie showing is made that a prior conviction was uncounseled, the burden shifts to the state to prove that there was no constitutional infirmity, i.e., that the right to counsel was properly waived. Id. We cannot presume waiver from a silent record. The record must show that an accused was offered counsel but intelligently and understandingly rejected the offer. Id. at ¶ 25. If the offense is a petty offense, a proper waiver of the right to counsel requires only a knowing, intelligent, and voluntary waiver on the record in open court. A proper waiver in serious offenses also requires that the waiver be in writing. Id. at ¶ 24.
 {¶ 56} Appellant contends that she has made a prima-facie showing that the convictions were uncounseled because exhibits 43 and 44 both indicate that she was advised of her right to counsel. We disagree. *Page 22 
 {¶ 57} Appellant did not provide transcripts of her sentencing hearings or affidavits in support of her prima-facie claim that these convictions were uncounseled. Instead, she points to boilerplate language[3] in the exhibits indicating that the trial court advised her of the right to counsel. She assumes, necessarily, that such language means that she did not have counsel. Although no court has clearly delineated what a defendant must present to make a prima-facie showing in this context, the trial court did not plainly err by admitting these exhibits under these circumstances.
 {¶ 58} Appellant lastly contends in this assignment of error that the State failed to present sufficient evidence to prove that appellant was the individual named in the exhibits. Again, we disagree.
 {¶ 59} In State v. Jenks (1991), 61 Ohio St.3d 259, the Supreme Court of Ohio delineated the role of an appellate court presented with a challenge to the sufficiency of the evidence:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Id., at paragraph two of the syllabus. See, also State v. Russell (June 30, 1998), Athens App. No. 97 CA 37 (applying sufficiency analysis to proof of prior conviction). *Page 23 
 {¶ 60} Whether the evidence is legally sufficient is a question of law, not fact. Thompkins, at 386. Indeed, in determining the sufficiency of the evidence, an appellate court must "give full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Thomas (1982), 70 Ohio St.2d 79, 80. A jury verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v.Treesh (2001), 90 Ohio St.3d 460, 484; Jenks, at 273.
 {¶ 61} The State presented sufficient evidence to prove that appellant was the individual named in the prior convictions. Appellant's state identification card contained her social security number, a "unique indicator of identity." Russell. The police used that number to obtain appellant's BMV Report, which contained records of six previous convictions. Those convictions aligned with exhibits 43-48. Each of these exhibits identified the offender by some form of "Kelly Curry." Exhibits 47 and 48 had appellant's social security number, thus linking the name "Kelly Curry" on the exhibits to appellant's current name, "Kelly Volpe." This was sufficient evidence for a trier of fact to conclude that appellant was the individual named in the exhibits.
 {¶ 62} For all the foregoing reasons, appellant's second assignment of error is overruled. *Page 24 
 {¶ 63} Lastly, appellant contends in her first assignment of error that the trial court erred when it failed to merge the counts of aggravated vehicular homicide ("AVH") and OVI for purposes of sentencing. The concept of merger for sentencing purposes arises out of the double jeopardy provisions of both the United States and Ohio Constitutions. See State v. Lowe, 164 Ohio App.3d 726, 2005-Ohio-6614, at ¶ 18. These provisions guard against successive prosecutions and cumulative punishments for the same offense. Id.; State v. Needum (June 29, 2000), Franklin App. No. 99AP-1371.
 {¶ 64} Relying on State v. Zima, 102 Ohio St.3d 61, 2004-Ohio-1807, appellant contends that OVI is a lesser included offense of AVH and, therefore, she could not be sentenced for both offenses. Appellant's reliance on Zima is misplaced. Zima involved a case of successive prosecutions, the permissibility of which is determined by the test articulated in Blockburger v. United States (1932), 284 U.S. 299, 304,52 S.Ct. 180. Zima, at ¶ 18; State v. Bentley (Dec. 6, 2001), Athens App. No. 01CA13. Appellant's claim in this assignment of error is that the trial court erred by imposing cumulative punishments for what she considers is the same offense. Zima is not relevant to that determination.
 {¶ 65} Instead, to determine whether cumulative punishments may be imposed for crimes that arise from a single criminal act, we must apply the Supreme Court of Ohio's decision in State v. Ranee (1999),85 Ohio St.3d 632. Under Ranee, our analysis begins with R.C. 2941.25, the General Assembly's "clear indication" of its intent to permit cumulative punishments for the commission of certain offenses. Id. at 635-636. With that statute, the General Assembly permits multiple punishments if the defendant commits offenses of dissimilar import. Id. at 636; R.C.2941.25(B). If, however, the defendant's *Page 25 
actions constitute two or more allied offenses of similar import, the defendant may only be convicted (specifically, found guilty and punished) of only one. However, if offenses of similar import are committed separately or with a separate animus, the defendant may be punished for both. Rance at 636.
 {¶ 66} Thus, to determine whether appellant may be punished for both AVH and OVI, we must decide whether those offenses are allied offenses of similar import. In determining whether crimes are allied offenses of similar import, the Supreme Court of Ohio explained that "[c]ourts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes`correspond to such a degree that the commission of one crime will result in the commission of the other.'" Id. at 638, quoting State v. Jones (1997), 78 Ohio St.3d 12,14. The court explained that if the elements do so correspond, the defendant may not be convicted of both "unless the court finds that the defendant committed the crimes separately or with separate animus."Rance, at 638-639; R.C. 2941.25(B). If they do not, the offenses are of dissimilar import, and the defendant may be punished for both.Rance, at 639; Lowe, at ¶ 22.
 {¶ 67} The jury found appellant guilty of two counts of AVH in violation of R.C. 2903.06. The trial court properly merged these two counts for purposes of sentencing and sentenced appellant only for one count. R.C. 2903.06, the AVH statute, provides:
 (A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways: *Page 26 
 (1)(a) As the proximate result of committing a violation of [R.C. 4511.19(A)] or of a substantially equivalent municipal ordinance[.]
 * * *
 (2) * * *
 (a) Recklessly;
 * * *
 (3)* * *
 (a) Negligently[.]
 {¶ 68} Further, the AVH count also contained allegations of prior OVI convictions (three convictions within six years) that increased the severity of the count from a second-degree felony to a first-degree felony. R.C. 2903.06(B)(2)(a)(iv). When the existence of a prior conviction transforms the crime itself by increasing its degree, the prior conviction is an essential element of the crime. Brooke, supra, at ¶ 8. These prior convictions are, therefore, also elements that must be considered in the Rance analysis.
 {¶ 69} Appellant was also found guilty of OVI in violation of R.C.
4511.19(A)(1)(a). That statute provides:
 No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:
 The person is under the influence of alcohol, a drug of abuse, or a combination of them.
 {¶ 70} Additionally, this count contained allegations of prior OVI convictions (five convictions within 20 years) that increased the severity of the count from a first-degree misdemeanor to a fourth-degree felony. R.C. 4511.19(G)(1)(d). These prior convictions are, therefore, also elements that must be considered in the Rance analysis. *Page 27 
 {¶ 71} We find these counts of AVH and OVI are not allied offenses of similar import. Comparing the statutory elements of each offense in the abstract, they do not correspond to such a degree that the commission of one crime will result in the commission of the other. It is obvious that one could drive under the influence of alcohol, a drug of abuse, or a combination of them in violation of R.C. 4511.19 and not cause the death of another in violation of R.C. 2903.06. Additionally, one could drive recklessly or negligently and cause the death of another in violation of R.C. 2903.06 and not drive under the influence of alcohol, a drug of abuse, or a combination of them in violation of R.C. 4511.19. Finally, an individual who has three OVI convictions within six years, and therefore commits the first-degree felony form of AVH, does not necessarily commit the fourth-degree felony form of OVI, because that offense requires five such convictions within 20 years.
 {¶ 72} One other appellate court has also determined that AVH and OVI are not allied offenses of similar import. State v. Miller, Stark App. No. 2007CA00142, 2007-Ohio-6272, at ¶ 18. Other courts have found similar offenses, aggravated vehicular assault and vehicular homicide, not to be allied offenses of similar import of OVI. See State v.O'Neil, Cuyahoga App. No. 82717, 2005-Ohio-4999, at ¶ 18 (aggravated vehicular assault); State v. Roberts (June 29, 1998), Butler App. No. CA-97-10-186 (vehicular homicide).
 {¶ 73} Because the AVH and OVI offenses are not allied offenses of similar import, the trial court properly sentenced appellant on both counts. Appellant's first assignment of error is overruled. *Page 28 
 {¶ 74} In conclusion, appellant's assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BROWN and FRENCH, JJ., concur.
[1] In fact, appellant's counsel stipulated that the witness was an expert.
[2] Although the entry is unclear as to what charge appellant actually pleaded guilty to, neither party disputes that the charge was for OVI.
[3] Exhibit 43 contains language stamped on it that appellant was "advised as to pleas and right of counsel." Exhibits 44 and 46 contain typewritten form language that the appellant was "advised of * * * her rights under Ohio Crim. Rule 11 44." Ohio Criminal Rule 44 provides for the right to counsel for criminal defendants. *Page 1