The STATE of Ohio, Appellee,

v.

HUNTER, Appellant.

[Cite as *State v. Hunter,* 169 Ohio App.3d 65, 2006-Ohio-5113.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–05–059.

Decided Sept. 29, 2006.

Kevin J. Baxter, Erie County Prosecuting Attorney, and Mary Ann Barylski, Assistant Prosecuting Attorney, for appellee.

Jeremiah S. Ray, for appellant.

---

SINGER, Presiding Judge.

{¶ 1} This is an appeal from a judgment of conviction for rape rendered on a jury verdict in the Erie County Court of Common Pleas. For the reasons that follow, we affirm.

{¶ 2} In the early morning hours of April 20, 1995, a 30-year-old mother of two slept on a couch in the Sandusky, Ohio home of her parents. At approximately 3:00 a.m., the woman awoke, sensing that she was being watched. In the dark, she discovered a shadow that she thought was that of her young son who would sometimes watch her sleep.

{¶ 3} When she reached out, however, the figure in the room put a gloved hand over her mouth, forcing her head away from him while pulling her arm across her body. The stranger in the dark told her that if she was quiet no one would be

hurt. The intruder directed her to perform fellatio on him and then vaginally raped her.

{¶ 4} When he was finished, the intruder ordered the woman into a bathroom, directing her to remove her undergarments and pass them through the door to him. He then ordered her to take a bath.

{¶ 5} The woman ran the bathwater, but did not take a bath. Instead, she waited a few minutes and then looked outside. When she found the intruder gone, the woman woke her mother and called the police.

{¶ 6} The woman could not describe her attacker to the police, only that he had a rough stubble for a beard and smelled of alcohol. At a local hospital, a "rape kit" was performed, including a vaginal smear that, when tested, contained semen.

{¶ 7} Police investigated but excluded several suspects, including one exonerated by a DNA comparison with the semen in the vaginal swab. The case went cold.

{¶ 8} In 2003, the Ohio Attorney General's Office began a ·federally funded program to compare collected DNA samples filed in the Combined DNA Index System ("CODIS") with samples on file in unsolved criminal cases. In July 2003, the CODIS Administrator of the Ohio Bureau of Criminal Investigation ("BCI") advised Sandusky police that a "candidate match" had been obtained in the case. According to CODIS, a file sample of DNA from appellant, Sylvester Hunter, matched the DNA obtained from the semen sample found in the 1995 rape kit in this case.

{¶ 9} On this information, Sandusky police obtained a warrant for a fresh DNA sample from appellant. This sample was submitted to BCI for a second comparison to the DNA from the 1995 rape. Again, the DNA matched.

{¶ 10} Appellant was charged with rape and burglary. He pleaded not guilty and the matter proceeded to a trial before a jury. The jury acquitted appellant of the burglary charge, but convicted him of rape. The trial court accepted the verdict and, following a presentence investigation, sentenced appellant to an indeterminate term of incarceration of ten to 25 years, with ten years to be actual incarceration.

{¶ 11} From this judgment, appellant now appeals, setting forth the following three assignments of error:

{¶ 12} "I. The court erred in admitting the rape kit and the testimony concerning the analysis thereof over objections of defendant/appellant.

{¶ 13} "II. The jury verdict was against the manifest weight of the evidence and sufficiency of the evidence.

{¶ 14} "III. The trial court erred in allowing relevant evidence that was substantially more prejudicial than probative as under Evidence Rule 403(A)."

## I. DNA Evidence

{¶ 15} In his first assignment of error, appellant asserts that the trial court erred in admitting over objection the original 1995 rape kit and analysis related to the rape kit. According to appellant, because the state failed to call the person who broke the seal of the rape kit, the person who performed the rape kit, and the person who delivered the rape kit to the police, the state failed to establish an adequate chain of custody for the kit. Absent such a chain of custody, appellant insists, the state's authentication of the evidence failed and the evidence should have been excluded.

{¶ 16} While authentication of evidence is a condition precedent to its admission, the condition is satisfied when the evidence is "sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). The possibility of contamination goes to weight, not admissibility. A strict chain of evidence is not always necessary for the admission of physical evidence. *State v. Richey* (1992), 64 Ohio St.3d 353, 356, 595 N.E.2d 915, citing *State v. Wilkins* (1980), 64 Ohio St.2d 382, 389, 18 O.O.3d 528, 415 N.E.2d 303. Evidence of a process or system to produce an accurate result is sufficient to satisfy the rule. Evid.R. 901(B)(9).

{¶ 17} Appellant's complaint about the chain of custody is limited to the period during which the rape kit was administered at the hospital. Appellant insists that the state has failed to prove the authenticity of the collection of the sample that ultimately implicated him. He maintains that the state must present testimony of the person who first broke the seal of the rape kit, the physician responsible for collecting the kit, and the person or persons who delivered the kit into the hands of the police to establish a chain of custody, authenticating the sample.

{¶ 18} The standard to which appellant aspires would make cold cases virtually impossible to prosecute. The physician who supervised collection of the rape kit may no longer be in the area. Work records from nearly a decade earlier might not be available to identify other medical personnel involved. Indeed, this situation appears to be the case here.

{¶ 19} What does exist, however, are the hospital records from that period and the evidence-submission sheet accompanying the evidence to BCI. These documents were created and kept as part of a system or procedure in the ordinary course of business.

{¶ 20} The hospital records show that on April 20, 2005, a rape kit was obtained from the victim. The victim's testimony confirms that that evidence was gathered. The hospital emergency room report states that the rape kit was turned over "to the Sandusky Police." BCI records show that the rape kit associated with this victim was submitted to the lab by Detective John Paseka of the Sandusky Police Department. Absent evidence to the contrary, this is sufficient evidence of the authenticity of the samples contained in the rape kit to permit the trial court to admit the results from that kit into evidence. Accordingly, appellant's first assignment of error is not well taken.

## II. Sufficiency of Evidence

{¶ 21} In his second assignment of error, appellant suggests that there was insufficient evidence to support his conviction and that the jury's verdict was against the manifest weight of the evidence.

{¶ 22} In a criminal context, a verdict or finding may be overturned on appeal if it is either against the manifest weight of the evidence or there is an insufficiency of evidence. In the former, the appeals court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. In the latter, the court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged. Id. at 386–387, 678 N.E.2d 541. Specifically, we must determine whether the state has presented evidence that, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt? The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt? Id. at 390, 678 N.E.2d 541 (Cook, J., concurring); *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. See, also, *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132; *State v. Barnes* (1986), 25 Ohio St.3d 203, 25 OBR 266, 495 N.E.2d 922.

{¶ 23} In his argument with respect to the sufficiency of the evidence, appellant reiterates his assertion that the DNA evidence against him should not have been admitted because of faulty authentication resulting from gaps in the chain of custody. We find this argument no more persuasive than it was in appellant's first assignment of error.

{¶ 24} Appellant also asserts that the jury clearly lost its way in giving credence to the DNA results when literally no other evidence linked appellant to the crime and the origin of the samples was suspect due to the gap in the chain of custody.

{¶ 25} As we stated before, absent some reason to suspect mishandling, records maintained in the ordinary course of business establishing custody of evidence are sufficient to admit the DNA results. Moreover, the DNA profile from the rape kit existed years prior to its association with appellant's DNA. When that association did occur, appellant's DNA was retested with a new sample to confirm the match. At trial, the testimony was that the probability of the sample obtained from the rape kit belonging to anyone other than appellant was one in 756 trillion. On this evidence, we cannot conclude that the jury lost its way. Accordingly, appellant's second assignment of error is not well taken.

### III. Motion in Limine

{¶ 26} Immediately prior to trial, appellant filed a motion in limine to exclude testimony making direct or indirect reference to appellant's prior conviction and to the fact that the reason his DNA was in CODIS was because of his prior criminal offense. The trial court denied the motion.

{¶ 27} During the opening statement, the state explained that the match came about as the result of putting into CODIS "DNA samples for people who are in other proceedings." Later, a DNA expert described the CODIS system as "a repository for storing DNA profiles from various crimes and from some known individuals." Appellant objected to neither of these statements.

{¶ 28} A pretrial ruling on a motion in limine is a preliminary precautionary ruling by a court in anticipation of its rulings on evidentiary issues at trial. *State v. Grubb* (1986), 28 Ohio St.3d 199, 201, 28 OBR 285, 503 N.E.2d 142. The denial of a motion in limine preserves no error for appeal. *State v. Hill* (1996), 75 Ohio St.3d 195, 202–203, 661 N.E.2d 1068. Absent objection to the purportedly offensive evidence during trial, the issue is waived, irrespective of the ruling on the motion in limine. *State v. Maurer* (1984), 15 Ohio St.3d 239, 259, 15 OBR 379, 473 N.E.2d 768; *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, at paragraph three of the syllabus.

{¶ 29} Not only are the statements complained of, in our view, inoffensive, any possible error in their admission was waived by appellant's failure to object during trial. Accordingly, appellant's remaining assignment of error is not well taken.

{¶ 30} On consideration whereof, the judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.

Judgment affirmed.

HANDWORK and PIETRYKOWSKI, JJ., concur.