[Cite as *State v. Barnes*, 2017-Ohio-383.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

## JOURNAL ENTRY AND OPINION
### No. 104045

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TERMAINE O. BARNES

DEFENDANT-APPELLANT

## JUDGMENT:
### AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-14-588497-A and CR-15-595942-A

**BEFORE:** Laster Mays, J., McCormack, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** February 2, 2017

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio 44116

**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:     Brian D. Kraft
Assistant County Prosecutor
1200 Ontario Street
Justice Center, 9th Floor
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant, Termaine O. Barnes ("Barnes"), appeals his convictions and sentence, and asks this court to reverse the decision of the trial court. We affirm in part, reverse in part, and remand.

{¶2} Barnes was found guilty of attempted murder, a first-degree felony, in violation of R.C. 2923.02 and 2903.02(A); two counts of felonious assault, a second-degree felony, in violation of R.C. 2903.11(A); and having weapons while under disability, a third-degree felony, in violation of R.C. 2923.13(A)(2). The court imposed a prison sentence of 14 years.

I. Facts

{¶3} On December 21, 2013, Jermaine Bruce ("Bruce") went to visit Ariel Cabbell ("Cabbell") at her home. As Bruce was leaving, Curtis Davis ("Davis"), Cabbell's ex-boyfriend came to Cabbell's house and began arguing with Cabbell about having Bruce at the house. Cabbell noticed that Davis was accompanied by Barnes; however Barnes stayed on the sidewalk while Davis went on Cabbell's porch. While Cabbell and Davis were arguing, Bruce decided to leave Cabbell's house. As Bruce walked to his car, Cabbell observed Barnes shooting at Bruce. Bruce testified that he was shot, but jumped in his car and left the scene to seek medical attention. Bruce sustained several injuries including a punctured lung, ruptured kidney, ruptured liver, and a torn diaphragm.

{¶4} On the night of the shooting, Officer David Muniz ("Officer Muniz") was on duty when he responded to the shooting. Officer Muniz testified that Cabbell told him that a man named Teetee was the shooter, but Cabbell did not know his full name. Detective Michael Shay ("Detective Shay") was assigned to investigate the shooting. Again, Cabbell told Detective Shay that Teetee was the shooter, but Detective Shay was unable to identify Teetee at the time. A few weeks later, Cabbell contacted Detective Shay and told him that she found Teetee's Instagram account. After obtaining a search warrant for Teetee's Instagram account, Detective Shay reviewed Teetee's Instagram account and observed several pictures of Teetee with guns and large sums of money. Detective Shay took screenshots of some of the pictures from Instagram and asked a fellow officer, Officer Sedlak, if he recognized the individual in the pictures. Officer Sedlak recognized the individual in the pictures as Barnes. With this information, Detective Shay obtained a photograph of Barnes and used it in a photo array, where Cabbell identified Barnes as the shooter.

{¶5} Barnes was arrested and charged with attempted murder, felonious assault, aggravated menacing, criminal trespass, and having a weapon while under disability. The trial court granted a Crim.R. 29 motion for acquittal on the charges of aggravated menacing and criminal trespass, but found Barnes guilty on the remaining charges and specifications. Barnes was sentenced to 14 years imprisonment. He filed this timely appeal, and assigns four errors for our review:

I.      The appellant's convictions were not supported by sufficient evidence, and the trial court erred by denying his motions for acquittal;

II.     The appellant's convictions were against the manifest weight of the evidence;

III.    The admission of the unauthenticated pre-trial photographic array identification evidence at appellant's trial was plain error, an abuse of discretion and the result of ineffective assistance of counsel in violation of appellant's state and constitutional rights; and

IV.     The trial court erred by imposing court costs.

## II.     Sufficiency of the Evidence

### A.      Standard of Review

{¶6} "A Crim.R. 29 motion challenges the sufficiency of the evidence. The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial." *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, ¶ 13, citing *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Hill* at ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

**{¶7}** "A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state has met its burden of production at trial." *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41. When reviewing sufficiency of the evidence, an appellate court must determine """whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'"" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction." *State v. Rudd*, 8th Dist. Cuyahoga No. 102754, 2016-Ohio-106, ¶ 32.

### B. Law and Analysis

**{¶8}** In Barnes's first assignment of error, he argues that his convictions were not supported by sufficient evidence, and the trial court erred by denying his motions for acquittal.

> Crim.R. 29 provides, "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information or complaint, if the evidence is insufficient to sustain a conviction of offense or offenses." The evidence must be reviewed in the light most favorable to the prosecution. *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). If reasonable minds could reach different conclusions as to whether the material elements of the crime have been established, a judgment of acquittal is not appropriate. *State v. Bridgeman*, 55 Ohio St.2d 261, 263, 381 N.E.2d 184 (1978), citing *State v. Swiger*, 5 Ohio St.2d 151, 214 N.E.2d 417 (1966), paragraph two of the syllabus.

*Strongsville v. Eskander*, 8th Dist. Cuyahoga No. 92448, 2009-Ohio-5370, ¶ 11.

**{¶9}** The trial court properly denied the appellant's Crim.R. 29 motion for acquittal. Barnes was charged with attempted murder, in violation of R.C. 2923.02(A) and 2903.02(A).

> The elements of murder and attempted murder are set forth in statute. R.C. 2903.02(A) provides: "[n]o person shall purposely cause the death of another * * *" and R.C. 2923.02(A), the "attempt" statute provides that "no person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

*State v. Majid*, 8th Dist. Cuyahoga No. 96855, 2012-Ohio-1192, ¶ 19.

**{¶10}** According to R.C. 2901.22(A), "a person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." *Majid* at ¶ 20. Cabbell witnessed Barnes pointing a gun at Bruce and firing. By intentionally pointing the gun and firing at Bruce, Barnes's actions are sufficient for the trier of fact to determine that Barnes was attempting to murder Bruce. The eyewitness testimony was sufficient to support the conviction of Barnes. *See State v. Winters*, 8th Dist. Cuyahoga No. 102871, 2016-Ohio-928, ¶ 19 (eyewitness identification testimony alone is sufficient to support a conviction so long as a reasonable juror could find the eyewitness to be credible). Therefore, Barnes's conviction for attempted murder was supported by sufficient evidence, and the trial court did not err by denying his motion for acquittal.

**{¶11}** Barnes was charged with and convicted of two counts of felonious assault in violation of R.C. 2903.11(A) that states, "no person shall knowingly * * * cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Barnes pointed a gun, a deadly weapon, at Bruce and fired. Bruce was physically harmed because he sustained a punctured lung, a ruptured kidney, and a torn diaphragm. Therefore, Barnes's convictions for felonious assault were supported by sufficient evidence.

**{¶12}** Barnes was charged with and convicted of having weapons while under disability in violation of R.C. 2923.13(A) that states, "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance" while "[t]he person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence." Barnes was previously convicted of robbery, a second-degree felony offense in 2012. He used a gun to shoot Bruce. Therefore, the evidence was sufficient to convict him of having weapons while under disability. Barnes's first assignment of error is overruled.

## III. Manifest Weight of the Evidence

### A. Standard of Review

**{¶13}** As stated in *Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 441 (1997):

Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis added.)

(Citation omitted.) *Id.*, quoting *Black's Law Dictionary* 1433 (6 Ed.1990).

**{¶14}** In addition:

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. *See Tibbs v. Florida*, 457 U.S. 31, 38, 42 (1982). *See also State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721 (1983). ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.")

*Id.*

### B.    Law and Analysis

**{¶15}** In Barnes's second assignment of error, he contends that his convictions were against the manifest weight of the evidence.

In determining whether a verdict is against the manifest weight of the evidence, the following factors are guidelines to be taken into account by a reviewing court:    (1) awareness that even a reviewing court is not required to accept as true the incredible; (2) whether the evidence is uncontradicted;

(3) whether a witness was impeached; (4) what was not proved; (5) the certainty of the evidence; (6) the reliability of the evidence; (7) the extent to which a witness may have a personal interest to advance or defend by his testimony; (8) the extent to which the evidence is vague, uncertain, conflicting or fragmentary.

*State v. Clark*, 101 Ohio App.3d 389, 655 N.E.2d 795, 807 (8th Dist.1995), citing *State v. Mattison*, 23 Ohio App.3d 10, 490 N.E.2d 926 (8th Dist.1985).

**{¶16}** Cabbell's testimony was not contradicted, impeached, or vague. ""'In reviewing the 'manifest weight of the evidence, * * * eyewitness identification testimony alone is sufficient to support a conviction so long as a reasonable factfinder could find the eyewitness testimony to be credible.'"" *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387, ¶ 37. The factfinder found Cabbell's testimony to be credible, so her testimony alone is sufficient to support the convictions. Therefore, Barnes's convictions were not against the manifest weight of the evidence, and his second assignment of error is overruled.

## IV. Photographic Array Identification Evidence

### A. Standard of Review

**{¶17}** A court's ruling on the adequacy of authentication is reviewed for abuse of discretion. *State v. Bowling*, 8th Dist. Cuyahoga No. 93052, 2010-Ohio-3595, ¶ 33.

> The decision whether to admit or exclude evidence is subject to review under an abuse of discretion standard, and absent a clear showing that the court abused its discretion in a manner that materially prejudices a party, we will not disturb an evidentiary ruling. *See State v. Lyles*, 42 Ohio St.3d 98, 99, 537 N.E.2d 221 (1989); *Weiner, Orkin, Abbate & Suit Co., L.P.A. v. Nutter*, 84 Ohio App.3d 582, 589, 617 N.E.2d 756 (1992). An abuse of discretion connotes more than an error in law or judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral

delinquency." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993). When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Id.*

*Pappas v. Ippolito*, 177 Ohio App.3d 625, 2008-Ohio-3976, 895 N.E.2d 610, ¶ 19 (8th Dist.).

### B.     Law and Analysis

**{¶18}** In Barnes's third assignment of error, he argues that the admission of the unauthenticated pretrial photographic array identification evidence at his trial was plain error, an abuse of discretion, and the result of ineffective assistance of counsel in violation of his state and constitutional rights.

> "The threshold standard for authenticating evidence pursuant to Evid.R. 901(A) is low, requiring only foundational evidence for the trier of fact to conclude that the evidence is indeed what the proponent claims it to be." (Citation omitted.)     *State v. Dawson*, 2d Dist. Greene No. 2009 CA 63, 2010-Ohio-3904, ¶ 13.   "Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result" satisfies the standard.   Evid.R. 901(B)(9); *State v. Hunter*, 169 Ohio App.3d 65, 2006- Ohio-5113, ¶ 16, 861 N.E.2d 898 (6th Dist.). "Testimony that a matter is what it is claimed to be" satisfies it too. Evid.R. 901(B)(1); *State v. High*, 143 Ohio App. 3d 232, 2001-Ohio-3530, 757 N.E.2d 1176.

*State v. Wiley*, 2d Dist. Darke No. 2011-CA-8, 2012-Ohio-512, ¶ 11.

**{¶19}** The photo array was properly authenticated.   Detective Shay prepared the photo array, and Detective Sowul, a blind administrator, displayed the photo array to Cabbell.

> A blind administrator "means the administrator does not know the identity of the suspect."   R.C. 2933.83(A)(2).   "If a blind administrator is conducting the live lineup or the photo lineup, the administrator shall

inform the eyewitness that the suspect may or may not be in the lineup and that the administrator does not know who the suspect is." R.C. 2933.83(B)(5).

*State v. Bryson*, 8th Dist. Cuyahoga No. 98298, 2013-Ohio-934, ¶ 49.

{¶20} Both Detectives Shay and Sowul confirmed that Cabbell picked Barnes from the photo array in addition to identifying Barnes as the shooter through his Instagram account. Cabbell also identified Barnes in court as the person she picked in the photo array. We find that the photo array was properly authenticated, was not plain error, nor was there a reason to object to the evidence. Therefore, Barnes's third assignment of error is overruled.

## V.     Conceded Error

{¶21} In Barnes's fourth assignment of error, he argues that the trial court erred by imposing costs in the sentencing journal entries when it found him indigent and did not impose costs during the sentencing hearing. The state has conceded this error, and we remand to the trial court to correct the sentencing journal entry.

> "Pursuant to Crim.R. 36, '[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time.' *See also State ex rel. DeWine v. Burge*, 128 Ohio St.3d 236, 239, 2011-Ohio-235, 943 N.E.2d 535, ¶ 17 ("'[C]ourts possess inherent authority to correct clerical errors in judgment entries so that the record speaks the truth.'"), quoting *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 19. A nunc pro tunc entry can be used to correct mathematical calculations and typographical or clerical errors, i.e., "'a mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or judgment.'" *State v. Spears*, 8th Dist. Cuyahoga No. 94089, 2010-Ohio-2229, ¶ 10; *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, 940 N.E.2d 924, ¶ 15, quoting [*State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263,

¶ 19].   However, proper use of a nunc pro tunc order 'is limited to memorializing what the trial court actually did at an earlier point in time, such as correcting a previously issued order that fails to reflect the trial court's true action,' *Spears* at ¶ 10, 'not what the court might or should have decided or what the court intended to decide.'   *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, ¶ 18.   A nunc pro tunc entry relates back to the date of the original entry.   *Marsh* at ¶ 15."

*State v. Thompson*, 8th Dist. Cuyahoga No. 104226, 2016-Ohio-7404, ¶ 8, quoting *State v. Thompson*, 8th Dist. Cuyahoga No. 102326, 2015-Ohio-3882, ¶ 15.

{¶22} Judgment is affirmed in part.   The trial court's sentence regarding court costs are vacated.   This matter is remanded to the trial court to issue a nunc pro tunc order for the limited purpose of correcting the sentencing journal entry to reflect what the court actually did.

It is ordered that the appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

TIM McCORMACK, P.J., and
MELODY J. STEWART, J., CONCUR