[Cite as *State v. Persley*, 2017-Ohio-8342.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-16-1239

    Appellee                                 Trial Court No. CR0201601426

v.

Willie Charles Persley, Jr.                      **DECISION AND JUDGMENT**

    Appellant                                Decided:  October 27, 2017

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Claudia A. Ford, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Willie Persley, Jr., appeals the September 26, 2016 judgment of
the Lucas County Court of Common Pleas.  Finding no error, we affirm.

## Assignments of Error

{¶ 2} Appellant sets forth the following assignments of error:

I. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, §10 OF THE CONSTITUTION OF THE STATE OF OHIO.

II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S RULE 29 MOTION.

III. THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

## Background

{¶ 3} Appellant was indicted on March 4, 2016, for rape in violation of R.C. 2907.02(A)(2) and (B), a felony of the first degree, and the case proceeded to a jury trial. The following facts are derived from the testimony and exhibits in the record.

{¶ 4} On March 11, 2000, the victim, Lorna Hulsebus, attended a function in downtown Toledo, Ohio. Around 10:00 p.m., she walked alone to retrieve her car from a nearby parking lot. The outside temperature was cold and the victim was wearing a full-length coat with her hood up.

2.

**{¶ 5}** While walking, the victim noticed a person she described as a "tall black man with a bright yellow jacket." Other than that individual, she did not recall seeing anyone while proceeding to her vehicle.

**{¶ 6}** Upon reaching her vehicle, a person came up behind her and hit her "like a bulldozer with such force." The person put an arm around her neck and said, in a voice and dialect she described as "slang," that he was going to kill her. She stated the person then threw her to the ground and proceeded to pull down her clothes and vaginally rape her for approximately 15 minutes, at which point another person entered his or her vehicle in the lot and startled the rapist. The victim testified the rapist then fled, and that she did not have an opportunity to see him. The victim began to cry out for help and a nearby person, Roger Gluckin, came to her aid.

**{¶ 7}** Gluckin testified he had been working late that evening and that he was retrieving his vehicle from the lot. He said the victim approached him looking frightened and upset, and that she stated she had been attacked. Because he did not have a cell phone, Gluckin took the victim to a nearby television station where he worked to call the police. Gluckin did not see anyone in the parking lot that night he could identify as the rapist.

**{¶ 8}** The police arrived at the television station and returned to the parking lot with the victim to examine the scene. The police took pictures and searched for the victim's missing belongings. The victim testified that her purse and glasses were not recovered. The victim was taken by her husband to the hospital.

3.

**{¶ 9}** At the hospital, a nurse, Kristie Gallagher, administered a sexual assault examination and collected evidence to prepare a rape kit. The record reflects that evidence Gallagher gathered was admitted without objection, and consisted of the victim's "underwear," "coat," "pantyhose," and "additional underwear and clothing," along with a "swab container." The swab container, Gallagher explained, "[c]ontained * * * vaginal swabs, rectal swabs, oral swabs and then any other debris or secretions." A patrolman, Robert Rogalski, and detective, Vincent Mauro, testified that the evidence gathered was transported to and stored at the Toledo Police Department.

**{¶ 10}** Gallagher recorded the relevant information into a report. Referring to her report, she testified that the victim came into the hospital and was crying and had physical injuries, but was cooperative. The injuries Gallagher described and documented were "swelling to her lower lip and bruising," "blue-black discoloration" on the victim's back, thigh and leg, and a "3 millimeter tear" on the victim's external genitalia. Medical records were admitted into the record without objection.

**{¶ 11}** Also admitted without objection was a lease agreement, which reflected that appellant rented an apartment next to the parking lot where the victim was raped. An apartment representative, Melissa Malinowski, testified that appellant was a resident, from November 1999 to October 2000, during the time when the incident occurred, and that residents from that apartment complex parked their vehicles within the lot. Mauro confirmed appellant admitted to parking within that lot while living at the complex.

4.

{¶ 12} Appellant became a suspect when the evidence collected was forwarded to the Ohio Bureau of Criminal Investigation (BCI) crime laboratory. A sergeant, Keefe Snyder, testified that he transported the evidence to the laboratory and back to the Toledo Police Department.

{¶ 13} Through analysis of a stain from the victim's coat, bodily fluid was detected by a forensic scientist, Peter Tassi, Jr. A sample of the bodily fluid was sent to a DNA analyst, Andrea Dennis, to be compared to DNA samples held by BCI. The sample was compared to a known sample or buccal swab of appellant. Dennis testified that "[appellant] was included as the major source of DNA in both the non-sperm fraction and the sperm fraction of the cutting and swabbing of the coat." Specifically, Dennis stated BCI would have "to go through 468 quintillion profiles before [it] would ever expect to see [the match] again."

{¶ 14} Based on the evidence presented the jury found appellant guilty. The court accepted the verdict and appellant was sentenced to a mandatory prison term of nine years, with a mandatory five years postrelease control. Appellant now appeals his conviction.

**Rape**

{¶ 15} R.C. 2907.02(A)(2) states: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

5.

## Assignment of Error No. I

{¶ 16} In the first assigned error, appellant argues he was deprived effective assistance because his trial counsel failed to thoroughly challenge the DNA analysis submitted as circumstantial evidence. Appellee contends counsel chose a specific strategy, and that the alleged deficient performance did not prejudice appellant's rights.

{¶ 17} In evaluating ineffective assistance of counsel claims, the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus; *see also Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A court must determine whether there has been a substantial violation of any of defense counsel's essential duties to his client and whether the defense was prejudiced by counsel's ineffectiveness. *See State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999).

{¶ 18} Appellant presents two arguments to support his claim of ineffective assistance.

{¶ 19} First, he takes issue with counsel's failure to call an expert to contest Tassi and Dennis's testimony.

{¶ 20} However, "[t]he failure of trial counsel to call a witness is a decision concerning trial strategy, and, absent a showing of prejudice, such failure does not deprive a defendant of effective assistance of counsel." *State v. Williams*, 74 Ohio App.3d 686, 695, 600 N.E.2d 298 (8th Dist.1991). *See also State v. Gaston*, 6th Dist.

6.

Lucas No. L-06-1183, 2008-Ohio-1856, ¶ 33 ("[T]he decision whether or not to call an expert witness is solely a matter of trial strategy").

{¶ 21} In this case we find no showing of prejudice, and the decision to not call an expert is a matter of trial strategy that "will not be second guessed without a specific showing of prejudice to the appellant." *Gaston*.

{¶ 22} Appellant argues that "given the length of time between when the rape kit was utilized to gather evidence in 2000 and when it was finally processed in 2015, a number of issues could have been raised and presented by a DNA expert regarding the viability of the DNA itself and the testing[.]" Appellant provides no specific example from which we can infer the viability of the DNA or the testing was a problem. Thus, we are not convinced appellant has satisfied the applicable standard of showing the trial outcome would have been different, and "[b]ecause appellant offers no such showing, * * * we find that appellant's trial counsel was not ineffective in this regard." *Gaston*.

{¶ 23} Appellant also takes issue with counsel's alleged failure to investigate BCI's recent drug testing scandal, and counsel's failure to cross-examine regarding the scandal.

{¶ 24} We find appellant's theory (or lack thereof) on how such investigation and cross-examination could have changed the outcome of trial is not persuasive. Specifically, appellant only states:

Also, given recent issues with BCI firing and suspending scientists

in a drug testing scandal that occurred in 2016 and the lengthy gap in time

7.

between the time of the assault in 2000 until the rape kit was processed some 15 years later, counsel was deficient for not even questioning the state's BCI witnesses regarding those events and they may (or may not) be related to the DNA testing that occurred in this case.

{¶ 25} Appellant provides no specific example how such a scandal could have led to any change in the evidence. We simply are not convinced appellant provides a basis for us to conclude he was prejudiced by trial counsel's strategy to not investigate BCI's drug testing scandal or not cross-examine BCI's witnesses regarding it. *See State v. Tenace*, 6th Dist. Lucas No. L-05-1041, 2006-Ohio-1226, ¶ 26 ("The mere existence of an alternative theory of defense, however, is insufficient to establish ineffective assistance of counsel.").

{¶ 26} Accordingly, we find no merit in appellant's ineffective-assistance arguments, and the first assignment of error is not well-taken.

### Assignment of Error No. II

{¶ 27} In the second assignment of error, appellant argues the trial court erred in denying his Crim.R. 29 motion because the conviction is not supported by sufficient evidence. Appellee contends there is sufficient evidence in the record to support the conviction.

{¶ 28} Crim.R. 29 motions for acquittal are reviewed under the same standard as a sufficiency of the evidence claim. *State v. Hollstein*, 6th Dist. Lucas No. L-08-1184, 2009-Ohio-4771, ¶ 28. Whether there is sufficient evidence to support a conviction is a

8.

question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, appellate courts will not weigh evidence or assess credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 29} Here, we find the evidence presented is sufficient to show appellant engaged in sexual contact with the victim by purposely compelling her to submit by force or threat of force. *See* R.C. 2907.02(A)(2). Specifically, in viewing the evidence favorably to the prosecution, it is reasonable to conclude appellant was the man who struck the victim, knocked her down, and proceeded to rape her. The rapist threatened to kill the victim if she protested. The record reflects the rapist caused physical injuries, including a swollen lip, bodily bruising, and a vaginal tear.

{¶ 30} Moreover, the victim testified she had never seen appellant prior to trial. Yet the record reflects appellant's semen was on the victim's coat, and that a semen sample provided DNA, which Dennis testified was "one in 468 quintillion, 400 quadrillion." This was explained to mean that Dennis "would expect to have to go through 468 quintillion profiles before [she] would ever expect to see [the match] again."

9.

In light of this very strong evidence, we hold any rational factfinder could have found the essential elements of rape proven beyond a reasonable doubt.

{¶ 31} Accordingly, the evidence is legally sufficient and the second assigned error is not well-taken.

### Assignment of Error No. III

{¶ 32} In the third assigned error, appellant argues his conviction is against the manifest weight of the evidence. Appellee contends the conviction is amply supported by competent, credible evidence in the record.

{¶ 33} The standard of review for manifest weight is the same in a criminal case as in a civil case, and an appellate court's function is to determine whether the greater amount of credible evidence supports the conviction. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. The appellate court as if the "thirteenth juror" must review the record, weigh the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility and decide, in resolving any conflicts in the evidence, whether the trier-of-fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *See State v. Leech*, 6th Dist. Lucas No. L-13-1156, 2015-Ohio-76, ¶ 32, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 34} Here, based on the weight and persuasive nature of the circumstantial evidence, we find ample support for the conviction. *See State v. Hunter*, 169 Ohio

10.

App.3d 65, 2006-Ohio-5113, 861 N.E.2d 898, ¶ 24-25 (6th Dist.) (holding jury did not lose its way giving credence to "DNA results when literally no other evidence linked appellant to the crime").

{¶ 35} The victim testified she had never seen or made contact with appellant to explain why his bodily fluid would be on her coat. Per Gallagher's testimony and report, the victim's appearance, demeanor, and injuries were consistent with those that would exist where a rape occurs. Rogalski and Mauro testified that the physical evidence was transported to and stored at the Toledo Police Department safely and securely. Malinowski's testimony and the lease agreement reveal appellant lived in an apartment complex adjacent to the parking lot where the rape took place, and that he parked his vehicle in the parking lot around the time period the rape occurred. Mauro corroborated the fact that appellant parked his vehicle in that lot. Lastly, Dennis testified that appellant was a "major source" of the bodily fluid found on the victim's coat. We find the evidence in the record shows it is reasonable to conclude he was the rapist based on the greater amount of credible evidence.

{¶ 36} Accordingly, this is not the exceptional case in which the evidence weighs heavily against the conviction, and the third assigned error is found not well-taken.

## Conclusion

**{¶ 37}** For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.
                                               _____
                                                          JUDGE

James D. Jensen, P.J.

                                             _____
Christine E. Mayle, J.                                      JUDGE
CONCUR.

                                             _____
                                                          JUDGE