[Cite as *State v. Lacy*, 2018-Ohio-3249.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-A-0007** |
| JAVONTE R. LACY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2017 CR 00099.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Michael J. Goldberg,* The Goldberg Law Firm, LLC, 323 Lakeside Avenue, Suite 450, Cleveland, OH 44113 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Javonte R. Lacy, appeals the denial of his Motion for New Trial by the Ashtabula County Court of Common Pleas. The issues before this court are whether a trial court properly denies a motion for new trial based on an alleged conflict of interest in trial counsel's representation of the defendant and the defendant's brother where there is an unsubstantiated claim that the brother was willing to testify and exculpate the defendant, and,

alternatively, based on breaks in the chain of custody of narcotic evidence where the evidence was resubmitted for forensic testing because the scientists who performed the original tests were disciplined by the laboratory which employed them. For the following reasons, we affirm the decision of the court below.

{¶2} On March 1, 2017, the Ashtabula County Grand Jury indicted Lacy on two counts of Trafficking in Heroin, felonies of the second degree in violation of R.C. 2925.03(A)(1) and (C)(6)(e).

{¶3} On March 13, 2017, William P. Bobulsky entered an appearance as attorney for Lacy.

{¶4} Between November 6 and 8, 2017, the case was tried to a jury which found Lacy guilty of both counts of Trafficking.

{¶5} On November 22, 2017, Attorney Michael J. Goldberg entered an appearance as attorney for Lacy and filed a Motion for New Trial.[1] As grounds for a new trial, Lacy claimed that he was deprived of constitutionally effective assistance of counsel on account of trial counsel's representation of his brother in another criminal matter and the State's failure to establish a chain of custody for narcotics tested by Ohio's Bureau of Criminal Investigation (BCI).

{¶6} On December 20, 2017, the State filed its Response in Opposition.

{¶7} On December 29, 2017, the trial court denied Lacy's Motion without hearing. The court ruled:

> The defendant * * * claims that his counsel failed to render effective assistance because of a conflict of interest in representing his brother, Jonah Lacy, on another criminal matter. The defendant has submitted an affidavit in which he claims that Jonah Lacy was available and prepared to testify that he, not the defendant, sold the

---

[1]. Attorney Bobulsky was granted leave to withdraw as counsel for Lacy on January 4, 2018.

2

heroin to the confidential informant in this case, and that he discussed this with Attorney Bobulsky. There was substantial evidence presented to the jury that the defendant, Javonte Lacy, in fact sold the drugs. The defendant's claim lacks credibility. The State contends that if Jonah Lacy had testified in this case he would have either testified truthfully, incriminating the defendant, or perjured himself. Either way, effective defense counsel could not have called him as a witness. Jonah Lacy was not a state's witness in this case and he was not a co-defendant. The State indicates that Jonah Lacy's subsequent criminal case is entirely unrelated to this case.

The defendant also argues that the State failed to establish a sufficient chain of custody to support admission of the heroin in this case. In ruling on the admission of the drugs, the Court determined that the State had provided a sufficient chain of custody and that there was no credible indication that the evidence had been tampered with in any way.

{¶8} On January 4, 2018, a sentencing hearing was held at which Lacy was sentenced, inter alia, to serve consecutive four-year prison terms for each count of Trafficking for an aggregate sentence of eight years. Lacy's sentence was memorialized on January 8, 2018.

{¶9} On January 25, 2018, Lacy filed a Notice of Appeal. On appeal, Lacy raises the following assignments of error:

{¶10} "[1.] The trial court erred to the prejudice of defendant-appellant in overruling his Motion for New Trial because his trial counsel's actual conflict of interest deprived defendant-appellant of his Sixth Amendment right to effective assistance of counsel, free of conflicts."

{¶11} "[2.] The trial court erred by overruling Mr. Lacy's Motion for New Trial and by failing to exclude toxicology results produced by questionable practices and insufficient evidence establishing a chain of custody linking each time the alleged narcotics were tested."

3

{¶12} "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: * * * [i]rregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial." Crim.R. 33(A)(1); *State v. Gau*, 11th Dist. Ashtabula No. 2010-A-0013, 2010-Ohio-5516, ¶ 26 (motion for new trial based on the claim that defendant's "trial counsel represented his brother in a previous case * * * somehow creat[ing] a conflict of interest, which deprived him of his right to effective assistance of counsel"). "Application for a new trial shall be made by motion which * * * shall be filed within fourteen days after the verdict was rendered * * *." Crim.R. 33(B).

{¶13} "A motion for new trial pursuant to Crim.R. 33(B) is addressed to the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion." *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990), paragraph one of the syllabus; *State v. Valentine*, 11th Dist. Portage No. 2002-P-0052, 2003-Ohio-2838, ¶ 17 ("[t]he decision of whether or not to hold an evidentiary hearing on a defendant's motion for new trial is within the sound discretion of the trial court"). "The discretionary decision to grant a motion for a new trial is an extraordinary measure which should be used only when the evidence presented weighs heavily in favor of the moving party." *Valentine* at ¶ 14.

{¶14} It has been widely recognized that a trial court may assess the credibility of affidavits submitted in support of a motion for new trial in the

4

absence of an evidentiary hearing. *State v. White*, 8th Dist. Cuyahoga No. 105430, 2017-Ohio-6984, ¶ 16 ("[w]hen reviewing motions for a new trial, a trial court may weigh the credibility of affidavits submitted in support of the motion in determining whether to accept the affidavit as true statements of fact") (cases cited); *State v. Knecht*, 12th Dist. Warren No. CA2015-04-037, 2015-Ohio-4316, ¶ 35 ("it is well-established that a trial court may weigh the credibility of the affidavits submitted in support of a motion for a new trial to determine whether to accept the statements in the affidavit as true") (cases cited); *State v. Lam*, 2015-Ohio-4293, 46 N.E.3d 138, ¶ 73 (2d Dist.).

{¶15} In assessing the credibility of affidavits, the trial court may consider all relevant factors. *State v. Shakoor*, 7th Dist. Mahoning No. 10 MA 64, 2010-Ohio-6386, ¶ 27. In particular, the factors identified by the Ohio Supreme Court in *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), for assessing the credibility of affidavits submitted in support of petitions for postconviction relief have been recognized as applicable in assessing affidavits submitted in support of a motion for new trial. *State v. Henry*, 2017-Ohio-7426, 96 N.E.3d 1123, ¶ 19 (2d Dist.) ("[a]lthough the *Calhoun* case involved a review of a petition for postconviction relief rather than a motion for new trial, we have held that the *Calhoun* factors 'also comfortably appl[y] to affidavits submitted in support of a motion for new trial'") (citation omitted); *State v. Gaines*, 1st Dist. Hamilton No. C-090097, 2010-Ohio-895, ¶ 26 (cases cited).

{¶16} According to *Calhoun*:

[A] trial court, in assessing the credibility of affidavit testimony in so-called paper hearings, should consider * * * (1) whether the judge

5

reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony.

* * *

Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. Such a decision should be within the discretion of the trial court. A trial court that discounts the credibility of sworn affidavits should include an explanation of its basis for doing so in its findings of fact and conclusions of law, in order that meaningful appellate review may occur.

*Calhoun* at 285.

{¶17} In his first assignment of error, Lacy claims he was entitled to a new trial as his affidavit established that trial counsel's representation of his brother created an actual conflict of interest which prevented counsel from rendering constitutionally effective assistance and caused him actual prejudice.

{¶18} According to Lacy's affidavit (the only evidence proffered in support of the Motion):

6. The informant called by the State testified that the drug transactions at issue were set up by him with me. He also testified that he had no prior dealings with my brother Jonah and, in fact, did not know his name.

7. Both of the above facts were untrue, and I made Mr. Bobulsky aware of this in the course of consultation regarding this case and preparation for trial. I expected Mr. Bobulsky to challenge the informant's testimony with information I provided him as to my

6

brother, Jonah Lacy's prior drug trafficking relationship with the State's confidential informant.

* * *

11. My defense at trial, I thought, was to be focused on the fact that the informant was actually engaged in drug trafficking activity with my brother and not me and that he had lied about this fact and the fact that he had known and dealt drugs with my brother for at least one year prior to the drug transactions at issue in my case.

12. At trial when I questioned Mr. Bobulsky as to why the subject was not pursued in cross-examination of the confidential informant or in argument, he told me that "I can't bring your brother into your case because I represent him as well."

13. My brother came to court to testify on my behalf to say the drugs involved in this case [were] his and the transactions were his and he had known the confidential informant for a significant period of time, however, * * * Mr. Bobulsky did not call him to testify. When I asked him why he said "because it is a conflict of interest because I represent you and your brother and if your brother admits to the drugs being his you will both go to jail".

{¶19} Lacy argues at length in his brief that the facts alleged in his affidavit present an actual conflict of interest resulting in ineffective assistance of counsel. The determinative issue, however, is whether the trial court abused its discretion in finding that those allegations lacked credibility. We find no abuse of discretion.

{¶20} Lacy's convictions were based on two controlled buys of heroin with a confidential informant. Lacy essentially contends that it was his brother, Jonah, who sold the informant the heroin and that Jonah was willing to testify as such. He alleges trial counsel would not have Jonah testify because he represented Jonah in an unrelated criminal matter and believed that it would be an alleged conflict of interest to have Jonah incriminate himself by testifying in Lacy's trial.

7

**{¶21}** On their face, Lacy's allegations appear dubious. Lacy provides no reason why the informant would falsely implicate him in the crimes in order to protect Jonah. Nor does Lacy provide any explanation as to why, if Jonah were willing to confess to the crimes, he would wait until Lacy's trial was underway to do so. Moreover, it is not clear why Jonah's willingness to confess to crimes that Lacy did not commit would create a conflict of interest for Attorney Bobulsky. Allowing a client to voluntarily present truthful testimony is not a breach of an attorney's duty to that client. Lastly, we note that the only evidence of Jonah's willingness to testify on Lacy's behalf is Lacy's affidavit. An affidavit from Jonah could have added credibility to the allegations.

**{¶22}** Considering the substance of Lacy's allegations, they are contradicted by the evidence at trial which strongly supports the informant's testimony that it was Lacy who sold him the heroin.

**{¶23}** Detective Greg Leonhard, working with the Trumbull Ashtabula Group (TAG) law enforcement task force, testified that he arranged for the informant to purchase ten grams of heroin from Javonte Lacy. That buy occurred on May 17, 2016. On a second occasion, Leonhard arranged for the informant to purchase fourteen grams of heroin on June 14, 2016.

**{¶24}** The informant testified that he had known Lacy for about a year prior to the controlled buys and had been to the residence at 5407 Lenox-New Lyme Road where the buys occurred. The informant arranged to purchase the heroin with Lacy by telephone. The informant also admitted that he knew Lacy's brother, although he could not recall his name.

**{¶25}** The informant testified without equivocation that, on May 17, 2016, he purchased heroin from Lacy at the Lenox-New Lyme Road residence when no one else was present. The informant was wearing a recording device during the transaction. Although the video did not record anything of significance, the audio recorded the conversation between the informant and the person from whom he was purchasing the heroin. During the course of the conversation, the informant testified that Lacy called his brother, Jonah, in order to discuss the price.

**{¶26}** Unrelated to the purchase of heroin, the informant also discussed dogs that Lacy was breeding. After the buy, Lacy led the informant outside to the kennels where the dogs were kept. Detective Cary Nelson, also with the TAG task force, was observing the residence during the buy and saw the informant exit with a "tall thin black male" and walk over to a barn.

**{¶27}** The informant testified that both Lacy and Jonah were present at the residence during the June 14, 2016 buy. This buy was also recorded with only the audio portion of the recording having substantive value. Although the informant spoke with both brothers, he only discussed the buy with Lacy. The voice of the person with whom the informant discussed the buy on June 14 is very similar to the voice on the May 17 recording. Detective Nelson monitored both buys and testified that the voice of the person selling the heroin was the same on both occasions.

**{¶28}** Lacy's mother testified at trial that Lacy did not live at the home on Lenox-New Lyme Road and that Jonah did live there. Lacy's mother noted that Lacy bred dogs on the property.

9

{¶29} That it was Lacy's voice on the recordings of the heroin buys is virtually irrefutable. That voice belongs to a dog breeder and Lacy's mother's testimony that he bred dogs on the property renders the claim that the informant intentionally implicated Lacy rather than his brother in the transactions wholly implausible.

{¶30} Assuming arguendo, as suggested in Lacy's affidavit, that the heroin belonged to Jonah and that in some sense he was the principal behind the transactions, these facts would not exculpate Lacy as the person who actually sold the heroin to the informant.

{¶31} The first assignment of error is without merit.

{¶32} In the second assignment of error, Lacy contends that the trial court erred in denying his Motion for New Trial on the grounds that the Bureau of Criminal Investigation analysis of the heroin should have been excluded as evidence. Crim.R. 33(E)(3) ("[n]o motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of * * * [t]he admission or rejection of any evidence offered against or for the defendant, unless the defendant was or may have been prejudiced thereby").

{¶33} Lacy argues:

BCI's 2016 internal investigation highlighted an issue pervasive enough that it offered to retest any drug samples tested between May and October if the State requested retesting. It appears the samples at issue here were retested, but there was no documented chain of custody assuring that the samples were properly tracked, submitted, cataloged, or tested. This is especially problematic when the two forensic scientists who performed the initial tests were either suspended and retrained or fired based on BCI's investigation results.

10

Appellant's brief at 18.

{¶34} "The chain of custody of a piece of evidence is part of the authentication and identification requirement of Evid.R. 901." (Citation omitted.) *State v. Guyton*, 2016-Ohio-8110, 74 N.E.3d 939, ¶ 31 (11th Dist.). "A strict chain of custody is not always required in order for physical evidence to be admissible." *State v. Wilkins*, 64 Ohio St.2d 382, 389, 415 N.E.2d 303 (1980). Rather, "[t]he state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur." *State v. Blevins*, 36 Ohio App.3d 147, 150, 521 N.E.2d 1105 (10th Dist.1987). "[A]ny of the alleged breaks in the evidentiary chain go to the weight, instead of the admissibility, of the evidence." *In re Jackson*, 11th Dist. Portage No. 2006-P-0119, 2007-Ohio-4955, ¶ 28; *State v. Richey*, 64 Ohio St.3d 353, 360, 595 N.E.2d 915 (1992) ("[t]he possibility of contamination goes to the weight of the evidence, not its admissibility").

{¶35} At trial, Jennifer Sulcebarger of the Ohio BCI testified regarding the identity and the weight of the heroin purchased by the informant. She testified that she obtained the heroin for testing from BCI's evidence vault. The markings on the evidence bags indicated that the evidence had been previously tested by BCI: the heroin from the May 17 buy on September 16, 2016 by a Stephanie Laos, and the heroin from the June 14 buy on September 20, 2016 by a Whitney Voss. Laos was subsequently terminated from her employment from BCI and Voss was disciplined, although Sulcebarger did not know the details of either situation.

11

**{¶36}** The chain of custody with respect to the initial submission to BCI is incomplete. Detective Leonhard testified that the heroin from the buys was given to Detective Nelson "for handling" and thence to Detective David Hoover, evidence custodian for TAG in 2016, for transportation to BCI. Detective Hoover testified that Detective Andre Jarrett, another TAG evidence custodian, delivered the evidence to BCI for the first time in 2016. Detective Jarrett did not have any recollection that he personally delivered the evidence in 2016.

**{¶37}** We agree with the trial court's observation that "a task force that apparently specializes in these drug cases seems to have * * * surprisingly slip-shod practices when it comes to evidence." As noted above, however, breaks in the chain of custody go to the weight rather than the admissibility of the evidence. It is not necessary for the State to establish the precise movement of evidence from its entry into police custody to a laboratory testing facility in order for the evidence to be admissible. *State v. Hunter*, 169 Ohio App.3d 65, 2006-Ohio-5113, 861 N.E.2d 898, ¶ 20 (6th Dist.) (rape kit evidence was admissible where "[t]he hospital emergency room report states that the rape kit was turned over 'to the Sandusky Police' [and] BCI records show that the rape kit associated with this victim was submitted to the lab by Detective John Paseka of the Sandusky Police Department"); *State v. Rajchel*, 2d Dist. Montgomery No. 19633, 2003-Ohio-3975, ¶ 26 (rejecting the argument "that the results of the urine sample should be suppressed because no evidence was presented regarding how the urine sample was transferred from the jail to the crime lab"); *State v. Pircio*, 8th Dist. Cuyahoga No. 54983, 1989 WL 7962, *4 (Feb. 2, 1989)

("[t]he failure of the prosecution to have every party who handled the evidence testify does not cause the custodial chain to fall"); *compare State v. Ohara*, 9th Dist. Summit No. 27342, 2014-Ohio-5532, ¶ 18 (conviction for possession was not against the manifest weight of the evidence despite "the State's failure to precisely describe how its exhibits were sealed and delivered to BCI").

{¶38} Furthermore, the fact that forensic scientists who conducted the initial analysis of the heroin were subsequently disciplined by BCI, without more, does not raise an inference that substitution, alteration or tampering with evidence occurred. Sulcebarger testified that the results of her analysis were consistent with the results obtained by Laos and Voss and consistent with the testimony of the informant. Sulcebarger testified that the submission from the May 17 buy consisted of 11.94 grams of heroin and that the submission from the June 14 buy consisted of 12.17 grams of heroin. Although the informant had arranged to buy ten and fourteen grams on each occasion, he purchased twelve grams on May 17 due to the price being lowered and twelve grams on June 14 due to limited availability.

{¶39} The second assignment of error is without merit.

{¶40} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas, denying Lacy's Motion for New Trial, is affirmed. Costs to be taxed against the appellant.

CYNTHIA WESTCOTT RICE, J.,

TIMOTHY P. CANNON, J.,

13

concur.